IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD J. PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DANIEL KNEAL, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On June 8, 2007, Plaintiff, Ronald Plaster, an inmate at the State Correctional Institution at Frackville, in this § 1983 civil rights action, filed a Motion for a "Vido (sic) Conference and Protection Order from Physical Abuse by Correctional Personnel and Retaliation as well as Uncontrollable Matters." **(Doc. 79).** Also on June 8, 2007, Plaintiff filed a support Brief. (Doc. 80). Plaintiff is proceeding on his Eighth Amendment claims of denial of proper medical care for his left knee condition as against the five (5) remaining Defendants, Kneal, Malewski, Dr. Sterling, PA Slivak and PA Ellesworth. (Doc. 23).[1]

On August 23, 2006, Plaintiff filed his Complaint (Doc. 1), and on January 5, 2007, his pleading, along with his discovery requests (Doc. 8) were served on the stated five (5) remaining Defendants. (Doc. 26). Subsequently, the five remaining Defendants were served, and counsel entered appearances on their behalf. (Docs. 28 and 31). On January 30, 2007, Defendants Sterling, Slivak and Ellesworth (Medical Defendants) jointly filed a Motion to Dismiss Plaintiff's

---

[1]We have been assigned this case for pre-trial matters.

Complaint. (Doc. 29). On February 20, 2007, Defendants Malewski and Kneal (Corrections Defendants) jointly filed a Motion to Dismiss. (Doc. 34). Both groups of Defendants have also filed support Briefs with respect to the two Motions to Dismiss. (Docs. 32 and 35).

Plaintiff filed his Brief and a Supplement in opposition to the Motion to Dismiss of the Corrections Defendants on February 23, 2007. (Docs. 39 and 40). Plaintiff then filed a Motion to file a Combined Brief in opposition to both Motions to Dismiss. Plaintiff was permitted to file a combined brief in opposition to the two Motions to Dismiss, and he was granted an extension of time until May 15, 2007 within which to do so. (Docs. 52, 55 and 57). In our May 8, 2007 Order, we directed that Plaintiff file his combined opposition brief ten days after he received Defendants' responses to his permitted discovery requests. (Doc. 65).[2]

On April 23, 2007, Defendants Malewski and Kneal (Corrections Defendants) filed a Motion to Stay Discovery and a support Brief with respect to Plaintiff's Request for Documents (Doc. 8). Defendants moved to stay discovery while their Motion to Dismiss was pending with the Court. (Docs. 59 and 60). Plaintiff filed a Brief in opposition to the Motion on May 3, 2007. (Doc. 62).

Plaintiff then filed a Motion for Default Judgment (Doc. 61) and stated that while Defendants have responded to his Complaint, Defendants did not respond to his discovery requests. Plaintiff

---

[2]Defendants' Motions to Dismiss will be not be ripe until 10 days after Plaintiff files his combined opposition brief. As discussed below, we find that Defendants have complied with our May 8, 2007 Order, and that Defendants have responded to Plaintiff's discovery requests and allowed him to review the relevant documents. (Doc. 82, Exs. A and B). However, since, by separate Order, we will direct Defendants, within five (5) days, to provide Plaintiff with copies of the discovery documents and to charge his account if it is insufficient to pay in full for all the copies, we shall construe Plaintiff's combined opposition brief to both sets of Defendants' Motions to Dismiss to be due on or about July 10, 2007.

also stated (Doc. 61, p. 1) that a default was entered on April 26, 2007 against Defendants for failure to answer his discovery requests, and that Defendants have disregarded the Court's Orders (Docs. 56 and 57). We found no record that default was entered against the Defendants for failure to respond to Plaintiff's discovery requests. In the Order of April 16, 2007, the Court directed Defendants to respond to Plaintiff's discovery requests within ten (10) days. (Doc. 57). In response to this Order, Corrections Defendants filed their Motion to Stay Discovery. (Doc. 59). The Medical Defendants did not also file a Motion to Stay Discovery. We did not find Defendants to be in violation of the April 16, 2007 Order.

Plaintiff also requested in his Motion for Default Judgment, in the alternative, that he be granted an order compelling Defendants to respond to his discovery requests under Rule 37 and sanctions. Plaintiff claimed that Defendants did not timely respond to his discovery requests, and thus they were in default, warranting the entry of default judgment against them. Plaintiff requested the Court to grant him $1.5 million in damages, full medical coverage for life, and a knee hinged stabilizer. The Court found that Plaintiff was not entitled to default judgment because Defendants did not violate the Court's Order. The Motion to Stay Discovery was in response to the Court's April 16, 2007 Order. Thus, we considered Plaintiff's Motion (Doc. 61) as a Motion to Compel Discovery, and we denied it to the extent that it was a Motion for Default Judgment. (Doc. 65).

On April 23, 2007, Defendants Malewski and Kneal (Corrections Defendants) filed a Motion for a Stay with respect to Plaintiff's discovery requests directed to Defendants (Doc. 8) pending the disposition of their Motion to Dismiss. Defendants submitted a Supporting Brief. (Doc. 60). Plaintiff filed an opposition Brief to the Defendants' Motion to Stay on May 3, 2007 (Doc. 62).

3

We did not find merit to the Defendants' Motion.  We agreed with Defendants that it was not yet clear if Plaintiff had advanced a viable Eighth Amendment claim against any of the five stated Defendants remaining in this case, but we found that Plaintiff was entitled to responses from Defendants regarding relevant portions of his Discovery Requests in order to respond to their Motions to Dismiss.

We agreed with Plaintiff that he was entitled to responses to some of his relevant discovery requests.  We found that Plaintiff required some of his requested discovery in order to respond to Defendants' Motions to Dismiss.  On May 8, 2007, we issued an Order (Doc. 65) denying Defendants' Motion for a Stay (Doc. 59), and denying Plaintiff's Motion for Default Judgment (Doc. 61).  Further, Plaintiff's alternative Motion to Compel Discovery (Doc. 61) was granted in part and denied in part.  Defendants were directed to respond to Plaintiff's Discovery Requests stated in the Order within ten (10) days of the date of the Order.  Plaintiff was granted a further extension of time to file his combined brief in opposition to Defendants' Motions to Dismiss until ten (10) days after he receives Defendants' responses to his above stated Discovery Requests.  (Doc. 65).

In his current Motion (Doc. 79), Plaintiff claims that Defendants are not honoring the Court's May 8, 2007 Order directing responses to his discovery requests (Doc. 65), and that he was attacked by a CO (Woods) on May 31, 2007, and his left knee was targeted and injured.  Plaintiff also claims that a false misconduct was issued against him on May 31, 2007, for assault on a CO. Finally, Plaintiff claims that his legal documents and access to this Court "are severly (sic) missing

or provented (sic)." (Doc. 79).[3]

As relief in his present Motion, Plaintiff requests the Court to conduct an emergency video conference since his "access to the courts are crupted (sic) my correctional personnel and and (sic) trying to make Plaintiff withdraw his suit." (*Id*.).  Plaintiff also seeks a protection for abuse order, and an order compelling Defendants to respond to his court ordered discovery requests.  (Doc. 80, p. 3).

Plaintiff filed a support Brief, and Corrections Defendants filed an opposition Brief with Exhibits (A-D).  (Docs. 80 and 82).  Medical Defendants did not reply to Plaintiff's present Motion.[4] In his brief, Plaintiff seeks a protection from abuse order in the nature of an order preventing physical abuse by prison staff and retaliation.  On June 18, 2007, Plaintiff filed a Declaration in support of his Motion. (Doc. 83).  We agree with Defendants that Plaintiff's current Motion for a Video Conference and for a Protective Order is seeking injunctive relief, and should be denied.[5]

---

[3]Plaintiff's frequent, continual filings with this Court belie his claim that his access to this Court is being hindered.  *See* Docs. 4, 18, 20, 37, 41, 42, 45, 46, 47, 48, 52, 56, 61, 63, 68, 70 74, and 83).

[4]Counsel for Medical Defendants also filed a document in response to the Court's May 8, 2007 Order, indicating that these Defendants do not possess or control any of the documents which this Court directed Defendants to produce to Plaintiff.  (Doc. 66).  Medical Defendants stated that Corrections Defendants had access to and control of Plaintiff's prison records.  In any event, Medical Defendants responded to Plaintiff's discovery requests. (Doc. 66).

[5]Since we deem Plaintiff as seeking relief in the nature of an injunction, we must issue a Report and Recommendation. *See* 28 U.S.C. §636(b)(1)(A).

## II. **Discussion.**

    1.  *Motion for Video Conference regarding Court's Discovery Order (Doc. 65)*

    Initially, we do not find that Defendants are in violation of this Court's May 8, 2007 Order directing them to respond to certain discovery requests of Plaintiff.  Defendants' evidence shows that Plaintiff was allowed to review the relevant discovery on May 17, 2007, and that he was given the opportunity to purchase copies of the relevant documents pursuant to DOC policy DC-ADM 003.  We agree with Defendants that we did not order Defendants to provide Plaintiff with copies of any discovery documents at no charge.  (Doc. 82, p. 3-4, Ex. B).  Plaintiff has not disputed Defendants' evidence, with any of his own evidence, which shows that Defendants have allowed him to review  the relevant discovery documents and that Defendants have given him the opportunity to purchase copies of any documents he desired.  According to Defendants, Plaintiff merely is seeking the Court to order that he be provided with copies of the documents free of charge, and this was not a requirement of the Court's May 2007 Order.

    In his Declaration, Plaintiff concedes that he was given the opportunity to pay for the documents he requested in discovery. (Doc. 83, ¶ 6).  However, Plaintiff avers that he made three attempts to pay for copies of the documents by submitting cash slips, and that he still has not received the documents.[6] Plaintiff states that prison staff advised him that he would not receive the medical documents until he had $91.00 in his account.  Plaintiff states that he only has $33.00 in his account.  By separate Order, we shall direct Defendants to provide Plaintiff with copies of the

---

    [6]Plaintiff admits that he received his grievance documents on June 12, 2007. (Doc. 83, ¶ 7.).

discovery documents at issue, which he requests, within five (5) days, and to charge Plaintiff's account with any amount that his balance does not cover.  The prison can then periodically deduct the remaining amount due to the copies from Plaintiff's account.

Based on the evidence, we do not find that Defendants have violated this Court's May 8, 2007 Order.[7]  Plaintiff will be provided with copies of the documents at issue which he requests. Consequently, as noted above, we construe Plaintiff's combined opposition brief to Defendants' Motions to Dismiss to be due on or about July 10, 2007.

2.  *Motion for Video Conference regarding Protection Order*

Plaintiff seeks a protection from abuse order against prison staff from physically attacking him and retaliating against him.  Plaintiff claims that he was attacked on May 31, 2007 by CO Woods and then falsely charged with a misconduct report regarding the attack incident as retaliation for his filing of this case.

In his Declaration, Plaintiff avers that he seeks a video conference "to overcome the outstanding motions to dismiss" due to problems with discovery. (Doc. 83, ¶ 8.).  However, as discussed, by separate Order, we have resolved the problem with respect to Plaintiff's payment for the discovery documents.  He also claims that his medical records will show his need for a hinged stabilizer brace for his knee.  As mentioned, Plaintiff will be given copies of his relevant medical records.  Plaintiff also avers that he needs a conference due to the alleged problems with access to

---

[7]On May 21, 2007, Plaintiff filed a Motion under Rules 34, 26 and 37, claiming that Defendants were not following this Court's May 8, 2007 Order. (Doc. 70).  In violation of Local Rule 7.5, M.D. Pa., Plaintiff did not file a support brief.  Thus, Plaintiff's May 21, 2007 Motion has been deemed withdrawn by separate Order.  In any event, we have found that Defendants have shown that they have complied with our May 8, 2007 Order.

the Court.  We find that Plaintiff has had more than ample access to this Court.

We agree with Defendants that Plaintiff fails to meet his burden with respect to his injunction request of showing irreparable harm and likelihood of success on the merits of his claims. Further, Plaintiff's injunction claims are completely different than his Eighth Amendment claims remaining in this case.

Injunctions may issue in only exceptional and extraordinary circumstances.  *Parent v. Whinston*, 347 F. Supp. 471, 472 (E.D. Pa. 1972), *citing Miller v. Standard Nut Margarin Co.*, 284 U.S. 498 (1932).  The grant or denial of a motion for a preliminary injunction is within the sound discretion of the district judge.  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443, *citing Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978), *cert. denied*, 449 U.S. 1014 (1980).  A preliminary injunction is not granted as a matter of right.  *Id.*

The moving party must demonstrate: (1) the likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested party; and (4) the public interest will not be adversely affected by the granting of relief.  *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction."  *Arthur Treacher's*, 689 F.2d at 1143.

A court may not grant a preliminary injunction when the issues raised in the motion for a preliminary injunction are entirely different from those raised in the complaint.  *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198-199 (2d Cir. 1985). "Because the

purpose of preliminary injunctive relief is to maintain the status quo or prevent irreparable injury pending the resolution of an underlying claim on the merits, the injury claimed in a motion for such relief must necessarily relate to the conduct alleged and permanent relief sought in a plaintiff's complaint." *Africa v. Vaughn*, Civ. No. 96-649, 1996 WL 677515, at p.1 (E.D. Pa. Nov. 21, 1996) *citing Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart*, 762 F.2d at 198-199; *Penn v. San Juan Hospital*, 528 F.2d 1181, 1185 (10th Cir. 1975).

The Corrections Defendants argue  that Plaintiff has not shown that he will likely prevail on the merits of his injunction claims, and that the Plaintiff has failed to meet his burden of establishing he will suffer irreparable harm if he is not given an immediate video conference with the Court as he requests, including the issuance of a protection from abuse Order by the Court.

Plaintiff claims that he was attacked by CO Woods on May 31, 2007, that his left knee at issue in this case was targeted, and that a misconduct against him [Plaintiff] was then issued charging him as being the aggressor in the incident.  Plaintiff claims that this was done in retaliation for his filing of the instant case.  Attached as Ex. C to Defendants' Brief is a copy of the May 31, 2007 Misconduct Report issued against Plaintiff.  According to the Misconduct Report:

> At approximately 2050, while med line was returning, inmate Plaster, R, GD9550 entered the housing unit with his pants below his buttocks.  This officer ordered him to pull his pants up.  He ignored my order and continued to his cell.  I then ordered Plaster GD9550 he was not to leave his cell with his pants down.  The inmate came back out of the door way and stopped, then yelled, "you shut your fuckin' mouth."  There were approximately twenty inmates out.  I then approached GD9550 and ordered him into his cell.  He raised

> his right arm in an attempt to swing.  This officer deflected his arm
> and a brief struggle ended with inmate GD9550 being placed in
> hand cuffs.

(Doc. 82, Ex. C, p. 1).

Defendants state and show that Plaintiff had a disciplinary hearing with respect to the Misconduct Report on June 4, 2007, and that the DHO found Plaintiff guilty of the charges. Plaintiff was sanctioned by the DHO to 180 days in disciplinary custody.  (Doc. 82, Ex. D).  While Plaintiff in his current Motion and Brief challenges the finding of guilt by the DHO, the evidence shows that he had a disciplinary hearing and that his due process rights were afforded.  In fact, Plaintiff does not claim that his due process rights were violated.  Rather, he argues that he should have been believed by the DHO instead of the CO, and that he did not swing at the CO.  Plaintiff also claims that the CO attacked him without cause and kicked his left knee, knowing about Plaintiff's chronic problems with it.  The evidence does not support Plaintiff's claims.

In his June 18, 2007 Declaration, Plaintiff avers that on June 8, 2007, he received another Misconduct Report regarding his claim during the investigation of the May 31, 2007 incident that he was assaulted by CO Woods. (Doc. 83, ¶ 4.).  Plaintiff states that the results of the investigation did not support CO Woods' May 31, 2007 Misconduct Report and makes it appear as though CO Woods' Report was fabricated.  Regardless of Plaintiff's new claim, the fact remains that Plaintiff was found guilty by the DHO with respect to the charges in CO Woods' May 31, 2007 Report.

We agree with Defendants that Plaintiff can file his Administrative remedies with the DOC regarding his false misconduct claim and retaliation claim against CO Woods.   (Doc. 82, p. 6). Plaintiff can also pursue his administrative remedies with respect to the new Misconduct Report of

June 8, 2007.  Since Defendants correctly note the proper DOC Administrative remedies process, we shall not repeat it herein.  (*Id*., p. 6, n. 3).

Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*

Based on Plaintiff's recent DHO hearing on June 4, 2007, and the new Report of June 8, 2007, it is clear that he could not have possibly exhausted all of his BOP administrative remedies with respect to his false misconduct claims, his retaliation claim, or his claim challenging his DHO conviction.

Thus, we find that, to the extent that Plaintiff's Motion is based on his claim that he was falsely charged by the May 31, 2007 Misconduct Report and convicted and sentenced, that this claim is not grounds for an injunction motion.  Nor is Plaintiff's claim regarding the June 8, 2007 Misconduct Report grounds for an injunction.  Plaintiff has adequate legal remedies with respect to these claims.  Plaintiff can assert these claims in a habeas petition after he exhausts his DOC

Administrative remedies.  Further, Plaintiff's 1983 claim against CO Woods may be *Heck* barred.[8]

Defendants also state that Plaintiff has not alleged he suffered from an atypical hardship as a result of being placed in disciplinary custody for 180 days.  (*Id.*, p. 7).  We agree.

Plaintiff alleges that, as retaliation, he was falsely charged with assault regarding the May 31, 2007 incident with CO Woods, despite the fact that he did not swing at the CO and the fact that the CO attacked him.  The record shows that Plaintiff was convicted of the charges and that sanctions were imposed on him after notice and a hearing.  (Doc. 82. Exs. C and D).  We agree with Defendants that the restrictions imposed on Plaintiff by the DHO were not atypical and significant hardships on him.  We do not find that Plaintiff has stated a liberty interest with respect to the DHO sanctions imposed on him, and thus find that he has not stated a due process violation.  Plaintiff's present injunction claims do not establish that he had a "protected liberty interest" that was infringed by the Defendants' alleged actions.  "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant

---

[8] In *Heck v. Humphrey*, 512 U.S. at 486-487, the Court adopted the so-called favorable termination rule, which provides that if the success of a civil rights damages suit "would necessarily imply the invalidity of his conviction or sentence," then the Plaintiff-prisoner's claim is cognizable only if he can prove that his conviction or sentence was reversed, invalidated, or called into question by a grant of federal habeas corpus relief.

If *Heck*'s favorable termination rule applied in this case, Plaintiff would have to first establish that his DHO finding of guilt regarding his June 4, 2007 conviction was found unlawful by a grant of federal habeas corpus relief.  *See Nelson v. Campbell*, ___ U.S. ____, 124 S.Ct. 2117, 2124 (2004).  *But see Muhammad v. Close*, ___ U.S. ___, 124 S.Ct. 1303 (2004) (civil rights action not *Heck* barred where inmate did not seek to expunge misconduct charge since it could not be construed as seeking a judgment at odds with inmate's conviction or calculation of time to be served on underlying sentence).

hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706  (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

Plaintiff avers that he needs the Court to hold a video conference and to issue a protection from abuse order preventing prison staff from assaulting him.  We find that the evidence shows that Plaintiff was convicted of assaulting CO Woods on May 31, 2007, and that Plaintiff was given his due process rights[9] and a DHO hearing.  Further, as stated, Plaintiff still has his DOC Administrative remedies to challenge his false misconduct claim and retaliation claim.  However, to the extent that Plaintiff seems to claim that the restrictions imposed on him, after CO Woods filed the misconduct charges against him and after he was convicted by the DHO, constituted an atypical and significant hardship, we do not find that these restrictions implicated his due process rights.  In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest.

Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

---

[9]*See Wolff v. McDonnell,* 418 U.S. 539 (1974)

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id.* at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id.*

Based on *Sandin* and *Griffin,* the Plaintiff's injunction motion fails to state a due process claim, since we find that the sanctions issued against him by the DHO did not impose atypical and significant hardships on the Plaintiff in relation to the ordinary incidents of prison life. Thus, we shall recommend that Plaintiff's injunction motion (Doc. 79) be denied.

Plaintiff finally claims that a video conference should be ordered since he has severe problems with access to this Court and he has no access to his legal documents. (Doc. 80, p. 3). In his Declaration, Plaintiff avers that he his being denied pen, paper, and legal supplies. (Doc. 83, ¶ 3.). However, as stated, we agree with Defendants that, based on Plaintiff's voluminous and repetitive filings with this Court, Plaintiff is clearly not being denied access to the Court or being deprived of legal supplies. (Doc. 82, p. 8).

**III. Recommendation.**

Based on the foregoing, we respectfully recommend that Plaintiff's Motion for a Video Conference and for a Protection from Abuse Order be denied.  **(Doc. 79).**


<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  June 20, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD J. PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DANIEL KNEAL, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 20, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

16

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                               **s/ Thomas M. Blewitt**

————————————————————————

                               **THOMAS M. BLEWITT**
                               **United States Magistrate Judge**

**Dated: June 20, 2007**