IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, SECRETARY OF THE | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Ronald Plaster, an inmate at the State Correctional Institution at Frackville ("SCI-Frackville")[1], filed, *pro se*, a civil rights action, pursuant to 42 U.S.C. § 1983, on August 23, 2006, naming as Defendants ten (10) individuals employed by the Pennsylvania Department of Corrections ("DOC"). Nine Defendants were employed at SCI-Frackville, and one Defendant was Secretary of the DOC. (Doc. 1). Plaintiff also filed two motions for leave to proceed *in forma*

---

[1]Plaintiff also filed a Motion for Leave to File an Amended Complaint on September 3, 2006. (Doc. 11). Plaintiff sought to add as a Defendant Donna Jones, acting Correctional Health Care Administrator ("HCA") at SCI-Frackville. We granted Plaintiff's Motion and directed the Clerk of Court to add Defendant Jones as a party Defendant in place of Defendant Prison Health Care Provider, which was named in the original Complaint. (Doc. 15). Plaintiff's Motion for Leave to Amend indicated that Ms. Jones was the Correctional Health Care Administrator, and thus, we directed the Clerk of Court to substitute Defendant Jones for Defendant Prison Health Care Provider. Plaintiff's Motion for Leave to Amend contained only the claims against Defendant Jones and thus, we considered the Motion as a supplement along with the original Complaint during our screening under the PLRA.

*pauperis.* (Docs. 2 and 9).   Further, Plaintiff filed a Motion for Relief of Copies and Services.  (Doc. 4).  Plaintiff requested  this Court to direct the Clerk of Court to accept only a single copy of all of his future filings in this case and for the Clerk of Court to serve Defendants with all of his filings in this case.  We denied Plaintiff's stated Motion (Doc. 4) by separate Order. (Doc. 16).  We also denied Plaintiff's second Motion for Relief of Copies and Service.  (Doc. 25).[2]

Additionally, Plaintiff filed a discovery request on September 5, 2006.  (Doc. 8). We indicated previously that after Plaintiff's Complaint was screened and service of it was directed on Defendants, Plaintiff could send his discovery request to Defendants' attorney.

## II. Allegations of Complaint.

In the present case, Plaintiff alleged that he has a chronic dislocating left knee and loose knee problem, and that a hinged stabilizer brace was ordered by a doctor to treat this condition. Plaintiff claimed that all of the Defendants violated his Eighth Amendment right to proper medical care by not giving him the correct brace for his knee due to alleged security concerns over the proper brace.  Plaintiff admitted  that he was offered (on two occasions) another type knee brace, but claimed that he would not sign a waiver for it since it was not the proper brace which the doctor had ordered.[3]

---

[2]In his recent Brief in support of his Motion to Stay the filing of his combined opposition brief (Doc. 90, p. 4), Plaintiff, for a third time, again requests the Court to grant him relief from paying for copies and mailings for his filings in this case.  We shall recommend that this request be denied in accordance with our prior Orders. (Docs. 16 and 25).

[3]As noted above, we incorporated Plaintiff's claims against Defendant Jones as contained in Doc. 11 for purposes of screening the Complaint under the PLRA.  Doc. 15.

Plaintiff averred that on July 29, 2005, he was seen by Defendant Physicians Assistant ("PA") Ellesworth for complaints about his left knee dislocating.  Plaintiff stated that Defendant Ellesworth examined and treated him by giving him an Ace wrap.  Plaintiff stated that it was determined that a subsequent examination was required to see if he needed a brace.  (Doc. 1, p. 5, ¶ 13.).

Plaintiff alleged that on August 5, 2005, he was given an examination by the medical staff in order to determine if he needed a brace for his dislocating knee.  Plaintiff stated that, upon examination, it was found that he had a loose knee problem, and a hinged stabilizer knee brace was ordered.  Specifically, Plaintiff stated that "examination revealed that Plaintiff has had past two surgeys (sic), ligament repaire (sic), cartilage repare (sic), clicking noted, crepitus, knee derament (sic), grinding, hing (sic) stabilizer ordered."  (*Id.*, ¶ 14.).[4]

Plaintiff averred that on August 10, 2005, he was sent to the medical department to pick up his hinged stabilizer brace, but he was given the wrong brace due to concerns regarding the hinged stabilizer brace by the security department head, namely, Defendant Captain Kneal.  Plaintiff claimed that Defendant Kneal refused to obey the doctor's order, which was in a note in his medical records.  Plaintiff stated that he refused to sign a waiver to receive the improper brace, which was offered to him in place of the hinged stabilizer brace.  (*Id.*, ¶ 15.).

Plaintiff alleged that Defendants Malewski, Prison Medical Director, Dr. Sterling, Prison Doctor, Ms. Lamas, Deputy Superintendent of Medical Department at the Prison,[5] PA Slivka,[6] and

---

[4]The Briefs of both Medical Defendants and Corrections Defendants also contain a summary of Plaintiff 's allegations.  (Doc. 32, pp. 2-3, and Doc. 35, pp. 2-4, respectively).

[5]We read this Defendant's name as "Lamas," and not as "Camas," as the Clerk of Court originally  docketed it.  We directed the Clerk of Court to correct the spelling of this

PA Ellesworth never issued a proper knee brace to stop his dislocating knee.  (*Id.*, p. 6, ¶ 16.).  He stated "their reason security will not allow them too."  We deemed Plaintiff as stating that he filed a grievance with respect to not being given the proper knee brace and that his grievance was resolved for the second time, but that he did not receive the proper brace.  (*Id.*).  Plaintiff alleged that the Defendants were responsible for his knee dislocating eleven (11) times in one year and that this happened with the issued brace on his knee, but not the proper brace.  (*Id.*, ¶ 17.). [7]

Plaintiff stated that Dr. Salomon[8], along with Dr. Sterling and PA Slivka, have found that he has a dislocating knee and recorded this finding in his medical file.  (*Id.*, ¶ 18.).

Plaintiff averred that Defendants Slivka and Malewski denied him physical therapy for "nearly a month" but stated that it was ordered by the doctor after he filed a grievance. (*Id.*, ¶ 19.).

Plaintiff claimed that his dislocating knee has caused him severe pain and suffering as well as a mobility problem for a year, and he claimed that the refusal to treat his problem has caused him  lasting damage and injury.  (*Id.*, ¶ 20.).

In his Claims Section of his Pleading, Plaintiff generally stated that all Defendants have violated his Eighth Amendment rights by depriving him of proper medical care for his serious

---

Defendant's name.  *See* Doc. 1, p. 3, ¶ 6.  Defendant Lamas has been dismissed from this case.

[6]Plaintiff spelled this Defendant's name as both "Slivka" and "Slinka," Doc. 1, ¶'s 12. and 18.-19.  However, we found this Defendant's name to be correctly spelled as "Slivka."  *See* ¶ 56.

[7]While Plaintiff stated that he did not accept the offered substitute knee braces, he also seems to have stated that he had used one of the knee braces issued to him for at least one year, but that it did not stop his knee from dislocating.  (Doc. 1, ¶'s 15.-17.).

[8]Dr. Saloman was not named as a Defendant in this case.

4

medical need for his left knee condition. (Doc. 1, pp. 7- 10). Plaintiff did not name the specific Defendants with respect to his generic claims. (*Id*.). Plaintiff also claimed that his grievances were resolved but that they were not followed as directed, and that he did not receive proper medical care, since he did not get the proper knee brace. (*Id*., p. 10, ¶ 44. , 47.). Plaintiff concluded that all named Defendants were sued for inadequate medical care. (*Id*., p. 11).

Plaintiff stated that he utilized the administrative remedies procedure available at the prison on March 12, 2006, in order to try and resolve his request for the proper knee brace for his dislocating knee problem, but stated that he was advised that the security department would not allow him to have the proper brace. Plaintiff's grievance was denied, and he appealed to former Defendant Shannon, Superintendent at SCI-Frackville. (*Id*., p. 12). Former Defendant Shannon denied Plaintiff's appeal. Plaintiff stated that he appealed his grievance to the final grievance appeal and it was denied.

As Exhibits to his Complaint, Plaintiff attached numerous Inmate Requests to Staff, Doc. 1, Exs. 1-34, as well as copies of his various grievances he filed with the prison. Plaintiff attached the responses to his Requests and grievances in which he claimed that he was not given a knee stabilizer brace. Doc. 1, Ex. B. Plaintiff also attached medical book pages regarding knee impairments, which he has highlighted, and a copy of his January 30, 2006 MRI report of his left knee. Doc. 1, Ex. C. Plaintiff further attached an original brochure for a hinged knee wrap which he indicated was needed for his knee condition.

Plaintiff's exhibits indicated that he filed an Inmate Request to Staff on August 10, 2005, requesting a knee stabilizer, and that a response to this Request was written by former Defendant

Jones, dated August 12, 2005, in which she indicated that PA Ellesworth's note stated that Plaintiff was given a brace which was a stabilizer with extra padding for his patella.  However, former Defendant Jones noted that Plaintiff refused this brace on August 10, 2005. (Doc. 1, Ex. 1).  Plaintiff filed another Inmate Request to Staff on August 15, 2005, with former Defendant Reichner, his counselor, and in this Request Plaintiff stated that he had a chronic condition with which the PA said she could not help him.  Former Defendant Jones responded to this Request on August 16, 2005, and stated that she recommended to Plaintiff that he try the offered knee brace which he had refused.  Former Defendant Jones stated that she spoke to the PA and that the PA felt that the offered brace would help Plaintiff.  (Doc. 1, Ex. 2).  Plaintiff was advised that he could not choose the health care provider he wanted to see, and that all doctor referrals go through the PA.  Plaintiff was instructed to sign up for sick call and to at least try the knee brace he was offered.  (*Id*.).[9]

Plaintiff sued all Defendants in their individual and official capacities. Doc. 1, p. 1, pp. 3-5. As relief, Plaintiff sought injunctive relief, as well as $4 million in compensatory damages from each Defendant, $10 million for pain and suffering, $1 million for "any all types of damages." (Doc. 1, p. 13).  Plaintiff also sought the Court to grant him a hinged stabilizer brace, a medical transfer to SCI-Mercer, and full medical coverage for the rest of his life.  (*Id*.).

On September 20, 2006, we issued a Report and Recommendation ("R&R") in which we recommended that Defendants Beard, Shannon, Lamas, Jones and Reichner be dismissed entirely

---

[9]We considered all of Plaintiff's exhibits attached  to his Complaint for screening purposes. Even though we were only considering Plaintiff's Complaint under the standard for a Motion to Dismiss, we were allowed to consider documents referenced in Plaintiff's pleading upon which his claims are based.  *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

from this action under 28 U.S.C. §1915(e)(2)(B)(ii). We also recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed. Further, we recommended that Plaintiff's claims for specific monetary damages in his pleadings be stricken. Furthermore, it was recommended that Plaintiff be permitted to proceed with respect to his Eighth Amendment claims against Defendants Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth.[10] It was also recommended that the matter be remanded to the undersigned for further proceedings.[11] (Doc. 14).

On December 27, 2007, the District Court entered a Memorandum and Order adopting our R&R. (Doc. 23). We then granted Plaintiff's *in forma pauperis* Motions and directed the Clerk of Court to serve Plaintiff's Complaint and discovery request on the five remaining Defendants, namely, Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth. (Doc. 26). Summons was issued and counsel for Defendants Dr. Sterling, PA Slivka and PA Ellesworth ("Medical Defendants") entered an appearance. (Doc. 28). On January 30, 2007, Medical Defendants jointly filed a Motion to Dismiss the Complaint. (Doc. 29). On February 6, 2007, counsel for Defendants Kneal and Malewski ("Corrections Defendants") entered an appearance. (Doc. 31).[12] On February 13, 2007, Medical Defendants filed their Brief in Support of their Motion to Dismiss with Exhibits. (Doc. 32). On February 20, 2007, Corrections Defendants jointly filed a Motion to Dismiss and a

---

[10]Defendants Kneal and Malewski are the Corrections Defendants, and Defendants Sterling, Slivka and Ellesworth are the Medical Defendants.

[11]We have been assigned this case for pre-trial matters.

[12]New counsel for Corrections Defendants entered an appearance on May 9, 2007, Doc. 67.

Support Brief.  (Docs. 34 and 35).  After being granted an extension of time, Plaintiff filed a Brief in Opposition to the Motion to Dismiss of Medical Defendants along with his Declaration.  (Docs. 39 and 40, respectively).

On March 14, 2007, Plaintiff filed a Motion for Extension of time to file his Opposition Brief to Corrections Defendants' Motion to Dismiss.  (Doc. 49).  Also, on March 14, 2007, Plaintiff filed his Response Brief with Exhibits to Corrections Defendants' Motion to Dismiss.  (Doc. 50). Notwithstanding Plaintiff's filing of his Briefs in Opposition to both the Medical Defendants' Motion to Dismiss and the Corrections Defendants' Motion to Dismiss, we granted his request for an extension of time to file supplemental briefs in opposition to both sets of Defendants' Motions to Dismiss.  (Doc. 51).  We gave Plaintiff until April 15, 2007 to file his briefs.  Then, on April 4, 2007, Plaintiff filed a Motion to Combine his supplemental briefs with respect to both Motions to Dismiss, and on April 9, 2007, the Court granted this Motion and Plaintiff's April 11, 2007 Motion for more time, and directed Plaintiff to file his consolidated Brief in Opposition to both Motions to Dismiss by May 15, 2007.  (Docs. 52, 55 and 57).

Subsequently, on May 8, 2007, the Court issued an Order and directed that Plaintiff file his combined Opposition brief to both Motions to Dismiss ten days after he received Defendants' responses to his permitted discovery requests. (Doc. 65).[13]  We shall not belabor the filings of the

---

[13]We noted that Defendants' Motions to Dismiss would be not be ripe until 10 days after Plaintiff filed his combined opposition brief.  We later found that Defendants complied with our May 8, 2007 Order, and that Defendants responded to Plaintiff's discovery requests and allowed him to review the relevant discovery documents. (Doc. 82, Exs. A and B). However, since, by separate Order, we directed Defendants, within five (5) days, to provide Plaintiff with copies of the discovery documents and to charge his account if it was insufficient to pay in full for all the copies, we construed Plaintiff's combined opposition brief to both sets of

parties regarding Plaintiff's discovery request to Defendants and the problems which ensued, including Defendants' Motions for a Protective Order and a Stay, and Plaintiff's Motion for a Protection from Abuse Order and for a video conference with the Court.  (Docs. 59 and 79).[14] Suffice to say that, as noted, we have construed Plaintiff's combined opposition brief to both sets of Defendants' Motions to Dismiss to be due on or about July 10, 2007.  *See* June 20, 2007 R&R, Doc. 86.

On July 9, 2007, Plaintiff filed a Motion to Stay his Opposition Brief to Defendants' Motions to Dismiss (Doc. 89) and a Brief in Support of his Motion to Stay (Doc. 90).  Plaintiff claims that on June 10, 2007, prison staff inventoried his personal property and took all of his legal materials and his evidence that involved this case, *i.e.* four documents.  (Doc. 90, p. 1).  Plaintiff states that it was alleged that pornography was with his property, but that he did not "have no porn with his belongings." (*Id*.).  Plaintiff believes, without support, that the true reason for the confiscation of his property was retaliation for his lawsuit against DOC staff.  (*Id*., p. 2).  Further, Plaintiff does not claim that any of the Defendants in the present case were involved in the alleged confiscation of his documents.  Plaintiff addresses the four items confiscated and explains why he needs them to file his combined opposition brief to Defendants' long outstanding Motions to Dismiss.  We find that not one of the four documents are relevant to this case and that they are not required for

---

Defendants' Motions to Dismiss to be due on or about July 10, 2007.  *See* June 20, 2007 R&R, Doc. 86.

[14]By separate R&R, we recommended that Plaintiff's Motion for a Protection from Abuse Order and for a video conference with the Court be denied.  (Docs. 86 and 88).

Plaintiff's combined opposition brief.[15]

The first document which Plaintiff states was confiscated was a copy of an Eighth Amendment case that involved another inmate (Keith Rozzdle) who was granted summary judgment for not receiving prescribed medication. This document has no relevancy to Plaintiff's Eighth Amendment claim against our Defendants, namely, that he was denied a hinged stabilizer knee brace for his knee condition. (Doc. 90, p. 2). Nor would this document assist Plaintiff in defending against Defendants' Motions to Dismiss.

The second document is labeled a "paper addressed to inmate Stackhouse" and involved a declaration Plaintiff was trying to prepare with respect to his retaliation claim asserted in his Motion for Protection from Abuse Order. (*Id.*, p. 3). This document is not relevant to Plaintiff's instant Eighth Amendment claims which are the subject of Defendants' Motions to Dismiss. Also, Plaintiff's retaliation claim is not presently before the Court in this case.

The third document which Plaintiff claims he needs returned to him before he can file his combined opposition brief is an envelope containing papers for inmate Bible. This document clearly has nothing to do with Plaintiff's Eighth Amendment claims raised in our case. Rather, Plaintiff states that the envelope contained documents he wrote for inmate Bible.

The fourth document is an envelope addressed to inmate Bell, who Plaintiff claims is an eye witness to retaliation against him at SCI-Frackville. (*Id.*). Plaintiff states that the envelope contained

---

[15]In fact, Defendants' pending Motions are to dismiss and are not for summary judgment. If this case proceeds and Defendants' Motions are denied, Plaintiff will be given the opportunity to present his evidence upon filing of a summary judgment motion at the appropriate time.

a declaration, case law and a document addressed to Keith Rozzdle.  Plaintiff does not state that the envelope contained any information with respect to his present Eighth Amendment claims against our Defendants.  Further, as stated, Plaintiff's retaliation claim is not in issue in our case.

Plaintiff mentions a fifth confiscated item, namely his "pictures of girls in bra and underware (sic) taped in the back of [his photo album] the book."  Obviously, this item has no relevancy to Plaintiff's Eighth Amendment claims in this case.  Further, Plaintiff does not claim that he requires his photo album to respond to Defendants' Motions to Dismiss.

Since we do not find any of the property confiscated from Plaintiff to be even remotely necessary as relevant documents to this case, we shall recommend that his Motion to Stay his combined opposition brief to Defendants' Motions to Dismiss **(Doc. 89)** be denied.  None of the confiscated items involve Plaintiff's knee condition and his medical care for it, and none of the items deal with any prescribed knee brace for Plaintiff.

We note that Defendants' Motions to Dismiss have been filed January 30, 2007 and February 20, 2007, and have now been pending for almost five months.  Plaintiff has filed his opposition Briefs to both Motions.  Plaintiff has been given repeated extensions of time to file his supplemental combined opposition brief.  We have also directed Defendants to respond, in part, to his relevant discovery requests before he was required to file his combined brief.  We have directed that Defendants provide Plaintiff with copies of discovery documents without requiring him to fully pre-pay for the copies.  We find it would be extremely prejudicial to Defendants to further delay the disposition of their Motions to Dismiss, especially since Plaintiff's proffered reasons for his latest request for a stay of his brief is for the return of documents that have nothing to do

with his present Eighth Amendment claims.

Further, Plaintiff has already filed Briefs in opposition to Defendants Motions to Dismiss. (Docs. 39 and 50).  In short, we see no reason offered by Plaintiff to justify a further delay in disposing of Defendants' Motions.  We find that this case should proceed forward, and if Plaintiff has evidence in the future which he requires to oppose a summary judgment motion, he can request an extension of time at that point.

As mentioned, Plaintiff claims that Defendant PA Slivka and Defendant Malewski denied him medical treatment in the nature of physical therapy for his dislocating knee problem, which was recorded in his medical files, for almost one month.  (Doc. 1, ¶ 19.).  Plaintiff avers that Defendants Malewski, Dr. Sterling, (former Defendant) Ms. Lamas, as supervisor of Malewski, PA Slivka and PA Ellesworth have not issued him the proper knee brace required to prevent his left knee from dislocating based on their reason that "security [department] will not allow them too (sic)." (*Id*., ¶16.).[16]

Plaintiff avers that the stated actions of the Defendants amount to deliberate indifference to his serious medical needs, and claims that his dislocating knee has caused him "severe pain, suffering, and mobility problem for a year" as well as "causing [him] lasting damage and injury." (*Id*., ¶ 20.).

---

[16]In his Motion to Amend his Complaint, Plaintiff stated that former Defendant "Reighner," Prison Counselor, denied him a medical transfer to a jail that will allow metal braces required for his serious medical need.  (Doc. 11, p. 2, ¶ 4.).  We noted in our prior R&R, that denial of transferring Plaintiff from one institution to another did not amount to a Constitutional violation, since Plaintiff had no right to be incarcerated in any specific prison.  *See Olim v. Wakinekona*, 461 U.S. 238 (1983).

Plaintiff claims that the medical staff has not yet issued him the proper knee brace due to security reasons.  Plaintiff raises Eighth Amendment claims against Defendants for their direct or indirect refusal to provide him with a hinged knee stabilizer brace, which is a metal brace according to Plaintiff, Doc. 11, p. 3, ¶ 6., and his attached brochure, Doc. 1, Ex. C.  Plaintiff admits that Defendants have offered him another type knee brace and that he has refused it, and he claims that Defendants' refusal to provide him with the hinged brace is due to security reasons, *i.e.* apparently due to the metal hinges or inserts contained therein.[17]  Plaintiff claims that the conduct of the Defendants in not giving him a hinged knee stabilizer brace and by not directing the medical staff to do so violates the Eighth Amendment.[18]

Plaintiff sued all of the Defendants in their individual capacity and in their official capacity with respect to his request for monetary damages (*i.e.*, compensatory and punitive).  Plaintiff indicated that he has exhausted his administrative remedies regarding his claim that he was denied the proper knee brace for his dislocating knee problem.  (*Id.*, ¶ 59.).  We did not find that Plaintiff

---

[17]As indicated above, Plaintiff also seems to indicate that he used another type of knee brace for one year but that his knee dislocated several times with it.

[18]We noted in our September 20, 2007 R&R that insofar as Plaintiff sought this Court to order his transfer to another State Correctional Institution (Doc. 1, p. 13), it is within the discretion of the Department of Corrections ("DOC") to designate the place of incarceration of inmates under its authority, and that inmates have no right to be confined in any specific prison and have no right to a transfer *See, e.g., Robinson v. Benson*, 570 F. 2d 920 (10th Cir. 1978) (Inmate has no right to choose his place of confinement and he may be transferred for any reason or no reason at all); *Olim v. Wakinekona*, 461 U.S. 238 (1983).  We also noted that judicial review of an administrative decision by the DOC, such as whether to transfer a prisoner to another institution or whether to remove an inmate from the RHU back to general population, is limited to whether there is a denial of due process or a clear showing of arbitrary and capricious action.  *See Marchesani v. McCune*, 531 F. 2d 459 (10th Cir. 1976), *cert. denied*, 429 U.S. 846.

13

has established that he exhausted all of his DOC Administrative remedies with respect to his present Eighth Amendment claims against all Defendants.  Rather, we only stated what Plaintiff indicated in his Complaint and that his exhibits indicated he filed grievances regarding his Eighth Amendment claims.  In any event, Plaintiff does not have to prove exhaustion.  Defendants have the burden to prove failure to exhaust.[19]

We found that Plaintiff's case against the five remaining Defendants should proceed since their personal involvement was sufficiently stated with respect to the Eighth Amendment claims Plaintiff alleges.  Plaintiff alleged that these Defendants participated in the decision to deny him the hinged knee stabilizer brace he needed for his serious conditions due to security reasons.  Plaintiff stated that he was advised that the security department at the prison that would not allow his proper knee brace since that type with hinges or metal inserts was not allowed in a state prison.[20]

---

[19]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Id.* at 230.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[20]Plaintiff's Exhibits attached to his pleading indicated that Plaintiff was advised by former Defendant Shannon in response to his grievance that the prison security department did not override the opinion of the Medical Department as to Plaintiff's medical needs.  (Doc. 1, Ex. B-3).  We previously noted that Plaintiff's final appeal of his grievance No. 146235 was dismissed as untimely.  (*Id.*, Ex. B-4).  We also noted that according to Plaintiff's January 2006 MRI of his left knee, he seemed to have tears on his medial meniscus as well as chondromalacia.  According to *Stedman's Medical Dictionary*, 27th Ed. at 341, "Chrondromalacia" is defined as the softening of any cartilage.  Plaintiff also had a prior ACL injury.  (*Id.*, Ex. C-1).

As stated, in reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we found that the Plaintiff was unable to maintain his action as against Defendants Beard, Shannon, Lamas, Jones and Reichner.  Specifically, we found that Defendants Beard, Shannon and Lamas lacked sufficient personal involvement in this case.  We found that these Defendants, by failing to direct their subordinates to provide Plaintiff with the knee brace he claims was proper for his dislocating left knee and by Shannon denying Plaintiff's grievance, were not sufficiently involved in this case.  We found that Plaintiff's request for monetary damages against Defendants in their official capacities should be dismissed.  Further, as noted above, we found that Plaintiff's request for specific money damages should be stricken from the Complaint.  The District Court agree with our recommendations.  (Docs. 14 and 23).

Both the Medical Defendants and the Corrections Defendants have filed Motions to Dismiss. Plaintiff has been given more than ample opportunity to file his briefs.  He has filed his opposing Briefs to both Motions, but he has failed to file in a timely manner, *i.e.* by July 10, 2007, his combined supplemental opposition brief, which we have permitted, to Defendants' Motions.  Thus, we find that Defendants' Motions are now ripe for disposition.

## IV. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the Complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A Complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S.

41, 44-46 (1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A Complaint that sets

out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

## V.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[21]

The five remaining Defendants are DOC individuals employed at SCI-Frackville.  Since the

remaining Defendants have been stated above, we shall not reiterate their names.[22]

It is well established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*.  It is well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a §1983 case and that a Complaint must allege such

personal involvement.  *Id*.  Each named defendant must be shown, through the Complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

---

[21]Section 1983 is not a source of substantive rights.  Rather, it is a means to redress
violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[22]Since all of the individual Defendants are employees of the state, they are state actors
for purposes of § 1983.

claims are based.  *Id*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights Complaint must state time, place, and responsible persons.  *Id*.  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (*per curiam*) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

## VI.  Discussion.

### A.  Medical Defendants' Motion to Dismiss (Doc. 29)

Medical Defendants argue that Plaintiff has not stated any Constitutional claim against them. They also state that Plaintiff's Complaint and attached exhibits show that he did not exhaust his administrative remedies with respect to his Eighth Amendment claims.  (Doc. 29, p. 1).  Medical Defendants further contend that Plaintiff's Eighth Amendment claims against them are insufficient since he did not allege that they knew their conduct presented a substantial risk of harm to him and that they acted in deliberate indifference to his serious medical needs.  (*Id*., p. 2 and Doc. 32, p. 1).[23]

---

[23] As an exhibit to their Motion to Dismiss, Medical Defendants attached a copy of Plaintiff's Complaint *sans* its numerous exhibits.  Doc. 29-3.  However, Medical Defendants

Plaintiff has alleged that Medical Defendants personally violated his constitutional rights for failing to provide him with the knee brace he claims was proper, and for failing to give him the hinged stabilizer knee brace for his left knee dislocating problem.   Plaintiff thus alleged that Medical Defendants denied him medical care.  Upon initial screening of Plaintiff's Complaint under the PLRA, we found that there were sufficient allegations which created personal liability as to the stated three Medical Defendants to proceed with service upon Medical Defendants.

Plaintiff basically claims that Medical Defendants knew about his chronic dislocating knee condition, and that they failed to provide proper medical care, *i.e.* a hinged knee stabilizer, even though they knew about his knee condition and even though a doctor ordered this type of knee brace for him on August 5, 2005.  Plaintiff claims that on August 10, 2005, Medical Defendants gave him a different type of knee brace than was ordered by the doctor and that he refused to accept the wrong knee brace.  Plaintiff avers that he was given the wrong type knee brace because Security Captain Kneal would not allow him to have the hinged knee stabilizer for security reasons due to its metal inserts or hinges.  Plaintiff was again offered another knee brace in January 2006, and he refused to use it.  Plaintiff's Ex. A-6 attached to his Complaint (Doc. 1), namely, his January 15, 2006 Inmate Request to Staff, indicates that he was given, in January 2006, a knee cap stabilizer, on two occasions, and not a knee stabilizer.  Plaintiff stated in his Request form that the doctor told him that the Security Department at the prison would not let him get the knee stabilizer ordered, and Plaintiff stated that the knee brace he required was also made with plastic supports

---

have attached a copy of Plaintiff's complete Complaint with all its exhibits to their Brief.  Doc. 32-3, Ex. A.

18

(as opposed to metal supports, which was why the Security Department would not allow Plaintiff to possess the hinged knee brace).

Both Plaintiff's allegations and his exhibits seem to suggest that Medical Defendants did try to get Plaintiff the prescribed hinged knee stabilizer brace, but they were advised that it was not allowed by the Security Department due to security concerns over the metal hinges or inserts.

As this Court stated in *Anderson v. BOP*, 2005 WL 2314306 (M.D. Pa. 2005), *7:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)(citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) to evidence deliberate indifference to a serious medical need.  See *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003).  The inmate must satisfy this two-part, conjunctive test.  Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. See *Farmer v. Brennan,* 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

> In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed.  *Estelle v. Gamble,* 429 U.S. 97, 104--105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).  However, if a prisoner is under the care of a medical expert, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *Farmer, supra,* 511 U.S. at 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. at 293.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).

As stated, we initially have found that Plaintiff asserted Eighth Amendment claims with respect to the denial of a hinged stabilizer knee brace against all five remaining Defendants, namely,  Kneal, Malewski, Sterling, Slivka and Ellesworth.

### 1. *Exhaustion of Administrative Remedies*

As their second argument, Medical Defendants contend that Plaintiff has failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against them.[24]

As mentioned, Medical Defendants argue that the Plaintiff failed to exhaust his available DOC administrative remedies against them.  Medical Defendants have properly raised the Plaintiff's failure to exhaust by the filing of their present Motion.  As Defendants note (Doc. 32, p. 6, n. 2),

---

[24]We shall first discuss Medical Defendants' exhaustion argument, Defendants' second issue, out of turn, since it may render as moot any discussion as to whether Plaintiff has stated Eighth Amendment claims against them, Defendants' first argument.

they must plead and prove the exhaustion issue as an affirmative defense in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Here, Medical Defendants have raised this defense as to Plaintiff's Eighth Amendment claims and have pointed to Plaintiff's admission, *via* his exhibits attached to his Complaint, that he did not exhaust his Administrative remedies, regarding his claims against them, with the prison before he filed this action.  As the *Ray* Court noted, *285 F. 3d* at 295, n. 8, failure to exhaust may be raised as the basis for a Motion to Dismiss in appropriate cases, and we find that this defense is properly asserted in the Defendants' Motion.

Defendants state as follows:

> Plaster contends that Slivka and Malewski denied him physical therapy for nearly a month.  He concedes that a doctor ordered the therapy after this in response to a grievance.  Exhibit "A", page 6, paragraph 19.  Plaster has filed two grievances concerning his not receiving the appropriate knee brace.  In neither initial grievance does Plaster ever complain about Dr. Sterling, Ellesworth, and Slivka.  See Exhibits "B" and "C".  Plaster appealed bother grievances to the next level.  He appealed the first grievance to the third lever to the Secretary's Office of Inmates Grievance and Appeals.  That office, through Sharon Burks ("Burks"), denied the appeal as untimely.  Burks stated:
>
> > DC-ADM804 provides you with a period of 15 working days in which to appeal the response from the Superintendent.  While we will offer and exercise latitude on issues of timeliness, it is noted that your appeal is well beyond the stipulated 15 day period and includes no reason for this delay.
>
> See Exhibit "D".

(Doc. 32, p. 3).

Medical Defendants argue, and Plaintiff's exhibits show, that at the time this case was instituted, Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment claims

against Medical Defendants relating to the failure to give him a hinged knee stabilizer brace.

Medical Defendants state that "an examination of the grievance attached to the Complaint as B1

and B2 and attached hereto as Exhibits "B" and "C" show a failure to exhaust administrative

remedies.  Plaster has not alleged in either of his two grievances any complaint about Dr. Sterling,

Ellesworth and Slivka."  (Doc. 32, p. 5).

Exhibit B-1 to Plaintiff 's Complaint is a copy of his Grievance No. 138071 dated 12-9-05.

Plaintiff states in this grievance as follows:

> I have a very bad knee that has had two major "sugerys" (sic) on it.  No
> MRI's have been taken, they refused to give me a proper knee brace for
> the right "perpuse" (sic) tell yesterday for the second time.  They gave me
> a leg "stableliser" (sic) so the knee "can not" (sic) move but they took it
> back due to metal in it.  They gave out Ace bandages for the "suport"
> (sic) and took them away.  "Whent" (sic) "out side" (sic) knee gave out
> walking on track had to be removed from the yard in a chair.  I "tolk"
> (sic) the doctor that I could move ok with pain in my knee "befor" (sic)
> the last "engery" (sic).  No stability test was done, no MRI, I got a cane
> and a Ace.  The Ace was taken away and this happen "with out" (sic)
> a check up

(Doc. 1, Ex. B-1 and Doc. 32, Ex. B).  At Section B. on Grievance No. 138071, Plaintiff indicated

"resolved 12/15/05" and signed his name.  (*Id.*).

We agree with Medical Defendants that Plaintiff's Grievance No. 138071 did not mention

them or complain about any of their conduct alleged in this case.

Plaintiff also filed Grievance No. 146235 on March 12, 2006. (Doc. 1, Ex. B-2 and Doc. 32,

Ex. C).  In this Grievance, Plaintiff stated as follows:

> I have a problem with the security Dept. I have a problem with a knee
> going out and it is very painful.  The security dept. has had two chances
> to fix the problem, but they have not.  I need a knee stabilizer which
> they make in "medial" (sic) [metal] and plastic.  I do not have a knee stabilizer

> because security Dept. will not let it in even though "othere" (sic)
> inmate(s) have the brace that medical is trying to get me in. This
> has been going on "sence"(sic) 8-10-05 to the present date over
> 8 months. I have been living in lots of pain and my knee has gone
> out <u>six times</u> in <u>eight months</u>. This is a on going problem that was labeled
> chronic from 7-29-05. I talked to Ms. Malewski and she informed me on
> Friday 3-10-06 security is at fault for my problems, as well as "loged" (sic)
> in my medical records. The medical dept. is sending me out to a
> "spiculest" (sic) for "finile" (sic) "reckamendation" (sic) over my knee
> and "surgey" (sic) is expected due to problems and MRI's taken
> a month and a half ago. This is a "vilation" (sic) of "Dsc" (sic) Policy and law.
> The 8th Amendment "Prohibits (Pain and suffering)" (sic). I wish for
> "comensation" (sic) as and "Danuges" (sic) because of the actions
> of the security dept. with a written agreement and proper brace.

(Doc. 1, Ex. B-2 and Doc. 32, Ex. C).

In his Complaint on page 12, ¶ 59., Section VI "Exhaustion of Legal Remedies", Plaintiff

avers that he tried to resolve his present Eighth Amendment claims by filing his March 12, 2006

Grievance, No. 146235. (Doc. 1, p. 12). Plaintiff does not mention his above stated first grievance,

i.e. Grievance No. 138071 dated December 9, 2005. In any event, we agree with Medical

Defendants that neither of Plaintiff's two Grievances raised any claims against them that they were

not providing Plaintiff with proper medical care. In fact, Plaintiff conceded in his March 12, 2006

Grievance, No. 146235, that Medical was trying to get him the knee stabilizer brace he claims he

needed. He stated that the security department would not let him have the metal brace, and he

did not claim that the Medical Defendants refused to let him have such a brace in deliberate

indifference to his serious medical needs. Plaintiff's Exhibit A attached to this March 14, 2007 Brief

(Doc. 50), i.e., his February 19, 2007 Inmate Request to Staff, also shows that his medical records

indicate that the security department denied him the proper knee brace on August 10, 2005, and

not the Medical Defendants.

In his Brief, Doc. 39, pp. 4-5, Plaintiff states that he exhausted all of his DOC Administrative remedies, and he cites to our statement on page 9 of our September 20, 2006 R&R in which we stated that "Plaintiff indicates that he has exhausted his Administrative remedies regarding his claim that he was denied the proper knee brace for his dislocating knee problem and his exhibits establish this." Indeed, Plaintiff's exhibits to his Complaint showed that he exhausted his March 12, 2006 Grievance, No. 146235, but they do not show that he raised any claim of denial of proper medical care against the Medical Defendants in this Grievance, as stated. Thus, Plaintiff's attempt to equate our initial finding that he exhausted his March 12, 2006 Grievance with a finding that he exhausted his Eighth Amendment claims against the Medical Defendants is of no moment. As discussed, Plaintiff's Grievance dated March 12, 2006 did not mention any Eighth Amendment claims against Medical Defendants which Plaintiff raises in his Complaint. While Plaintiff states in his Brief, Doc. 39, p. 5, that Defendants cannot offer any evidence to show that he did not exhaust his administrative remedies, Medical Defendants have shown through Plaintiff's own exhibits attached to his Complaint that he did not raise any Eighth Amendment claims against them in his Grievance.

Further, as Medical Defendants point out, Plaintiff's very own exhibits show that he did not exhaust his Administrative remedies with the prison with respect to his specific Eighth Amendment claims against them before he filed this civil rights action in federal court. In his initial Brief, Plaintiff argues that we have found (in our initial R & R) that he exhausted his Administrative remedies with the prison before he filed his action. However, as stated, we did not find that Plaintiff exhausted his Administrative remedies with respect to either set of Defendants remaining in this case. Thus, even though Plaintiff may have exhausted his Grievance No. 146235, this Grievance did not claim

any improper medical care by Medical Defendants.  Therefore, we agree with Medical Defendants in their Brief (Doc. 32, p. 5), that Plaintiff did not exhaust his Administrative remedies with respect to his Eighth Amendment claims against them.

The exhaustion requirement is a mandatory prerequisite to filing suit and must be sufficiently alleged.  *See Booth v. Churner*, 206 F. 3d 289 (3d Cir. 2000) *aff'd* 532 U.S. 731, 121 S. Ct. 1819 (2001); *Nyhuis v. Reno*, 204 F. 3d 65 ( 3d Cir. 2000).  Even if a Plaintiff is seeking both injunctive and monetary relief, as in this case (Doc. 1, p. 3), he still must exhaust his administrative remedies, as the PLRA makes no distinction between claims for damages, injunctive relief, or both.  *Id.*  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*

The Third Circuit Court of Appeals, as stated above, has held in the case of *Ray*, 285 F.3d at 295-296, that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. Medical Defendants, as discussed, have properly asserted this defense in the present case.

Recently, the Supreme Court reiterated that exhaustion was required in § 1983 cases.  In *Woodford v. Ngo*, _ U.S._, 126 S. Ct. 2378, 2382-2383 (2006), the Court stated:

> The PLRA strengthened the exhaustion provision in several ways.
> Exhaustion is no longer left to the discretion of the district court, but

is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought  - - monetary damages  - - cannot be granted by the administrative process. *Id.* at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra*, at 524, 122 S.Ct. 983.

We recognize that in *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910 (2007), the Supreme Court held that the failure to name defendants under the Michigan State grievance procedure (MDOC) did not amount to a failure to exhaust. However, the Michigan State grievance procedure did not require that t he inmate had to name the specific prison staff in his grievance. *See Buehl v. Beard*, 2007 WL 1830616, * 7, n. 8 (W.D. Pa.) The Court in *Buehl* stated that, while the MDOC policy did not require an inmate to identify specific prison staff involved with his grievance, the Pennsylvania DOC grievance policy does have such a requirement. As the *Buehl* Court stated:

> the Court in *Spruill* has already held that the Pennsylvania DOC's grievance policy does contain such a requirement to name responsible individuals and that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234.

*Id.*

The *Buehl* Court further stated:

> This court understands *Bock* to state that whereas Congress' intent in the PLRA's statutory exhaustion requirement was not thought to have as one of its leading purposes early notice, such a purpose may have been a subordinate purpose. Even if not a subordinate purpose of the Congress, early notice can be a purpose of the state policy (which provides the yardstick by which to measure exhaustion)

and as *Spruill* seemed to at least imply, was such a purpose of
the DOC policy.  Even if not a purpose of the DOC policy,
it is clear, regardless of the purpose of the requirement, that
*Spruill* requires the prisoner-grievant-plaintiff to name in the
grievance those he eventually sues, upon pain of procedural
default.  *See, e.g., Williams v. Pennsylvania, Dep't of Corrections*,
146 Fed.Appx. 554, 557 (3d Cir. 2005) ("his failure to identify
defendants Herbert, Street, or Smith in either of his two grievances,
means that he failed to exhaust his administrative remedies in
accordance with Pennsylvania's grievance process and the PLRA.").

*Id.*

The *Buehl* Court concluded:

Moreover, under *Spruill*, it is a Plaintiff's burden to explain why
he did not name a defendant in the grievance.  *See Spruill*, 372
F.3d at 234 (Spruill did not [name Brown in his grievance] and
has offered no explanation for his failure to do so.").  Plaintiff
has offered no affidavit as to why he did not name the Defendants
herein in his grievances.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
158, n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("This statement,
being unsworn, does not meet the requirements of Fed.Rule Civ.Proc.
56(e)"); *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
200 F.3d 795, 812 (Fed.Cir. 1999) ("Unsworn statements set forth in
a brief or memorandum of law submitted by a party generally are
not proper summary judgment evidence."); *Thornton v. U.S.*, 493 F.2d
164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument
does not constitute evidence."); *Chaiken v. VV Publishing Corp.*,
119 F.3d 1018, 1033 (2d Cir. 1997) ("Moreover, their unsworn
letters do not satisfy the requirements of Fed.R.Civ.P. 56(e) and
therefore cannot defeat VV's motion for summary judgement.")
In light of the foregoing, and in the face of Defendants' explicit
argument that Plaintiff procedurally defaulted his claims against
all defendants not specifically named in the grievance, the Plaintiff
has not carried his burden under *Spruill* with respect to explaining
why he failed to name the DOC Defendants in the grievances.

*Id.* at * 8.

In the present case, as in *Buehl*, Medical Defendants have argued that Plaintiff has procedurally defaulted his Eighth Amendment claims against them since they were not specifically mentioned in either of his grievances.   Nor has Plaintiff Plaster met his burden under *Spruill* and stated why he did not specifically mention any of the Medical Defendants in his grievances.   In fact, Plaintiff does not explain in his Declaration (Doc. 40) why he did not specify the Medical Defendants in his grievances.

Plaintiff's action is certainly challenging prison conditions and thus, exhaustion is required in his case.   It is undisputed that the Pennsylvania DOC has a grievance system available to inmates to complain about prison conditions.   It is undisputed by Plaintiff's own exhibits that before filing the instant action, Plaintiff did not exhaust his available Administrative remedies with respect to his specific Eighth Amendment claims against Medical Defendants, and that he did not mention Medical Defendants in his grievances.   The PLRA clearly provides that a § 1983 action with respect to prison conditions cannot be brought until the available Administrative remedies at the prison are exhausted.   *See Ngo*, 126 S. Ct. at 2384.   Plaintiff essentially thwarted the purpose of the exhaustion requirement by not allowing the prison to have a fair and full opportunity to address his present Eighth Amendment claims against Medical Defendants before he filed this action. *Id*. at 2385.   In fact, as stated, Plaintiff's latest grievance complained about the security department's decision not to let him have the knee stabilizer, and it did not mention Medical Defendants' conduct alleged in his Complaint.   The Court in *Ngo* concluded that "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 2387.   The manner in which Plaintiff attempted to exhaust his Eighth Amendment claims in this case as to Medical Defendants renders the prison's

grievance system as meaningless, since a prison's grievance process should provide "prisons with a fair opportunity to correct their own errors." *Id*. at 2387-2388. Thus, we find under *Ngo*, Plaintiff did not properly exhaust his administrative remedies with the DOC as to Medical Defendants since he did not mention them at all in his grievance with respect to his present Eighth Amendment claims against them regarding their alleged role in the denial of providing him with the proper knee brace.

Plaintiff's improper exhaustion as to Medical Defendants in this case renders the PLRA exhaustion requirement as completely ineffective. As the *Ngo* Court stated, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388. In the present case, Plaintiff did not file a grievance with the prison claiming improper medical care by Medical Defendants before he filed his action with this Court. Further, Plaintiff's exhibits regarding his latest grievance indicate that he complained about the security department's decision not to let him have the stabilizer brace he claims was required to prevent his knee from dislocating. The utilization of the prison grievance system by Plaintiff in this case, without mentioning any claims against Medical Defendants and without mentioning these specific Defendants, certainly did not afford the prison with a full and fair opportunity to consider his grievance against the stated Defendants before this case was commenced. As in *Ngo*, we find that Plaintiff's use of the DOC's grievance system with respect to Medical Defendants rendered the PLRA's exhaustion as "a toothless scheme." *Id*.

As the Court stated in *Ullrich v. Idaho*, 2006 WL 288384 , * 2 (D. Idaho), "[a] prisoner is required to exhaust all of his Administrative remedies within the prison system before he can bring

a civil rights lawsuit challenging the conditions fo his confinement."  "Exhaustion must occur prior to filing suit, and a prisoner may not attempt exhaustion of his Administrative remedies during the course of a civil rights action." (Citation omitted).

The Court in *Parker v. Perry*, 2006 WL 2635097, * 1 (E.D. Tex.), recently stated as follows:

> In 1996, Congress enacted the Prison Litigation Reform Act (hereinafter "P.L.R.A."), which made several changes to 42 U.S.C. § 1997e. Congress tightened up the exhaustion requirements.  Without exception, inmates are now required to exhaust all administrative remedies available in the prison system prior to filing a lawsuit.  The Supreme Court examined the new rules and unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court.  *Booth v. Churner*, 532 U.S. 731 (2001).  *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).  The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies.  *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  It is noted that the grievance procedures take approximately ninety days to complete.  *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998).  It is further noted that the Court has the option to dismiss civil rights lawsuits with prejudice where an inmate filed a lawsuit before exhausting his administrative remedies.  *See Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

*See also Tron v. U.S.*, 2006 WL 2599348 (D. Or.).  Exhaustion is a pre-condition to a § 1983 civil rights action and is mandatory.  *See Ngo*, 126 S. Ct. at 2382.

Further, as this very Court recently stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.), "[t]he PLRA mandates that inmates 'properly' exhaust Administrative remedies before fling suit in federal court." (Citing *Ngo* at 2387).  This Court also stated that the PLRA exhaustion requirement was designed, in part, to "afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit."  *Id.*, *9.  As this Court stated in *Fortune v. Bitner*,

2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion
> of administrative remedies is required for all actions concerning
> prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a);
> *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion
> requirement applies to all inmate suits about prison life, whether
> they involve general circumstances or particular episodes, and
> whether they allege excessive force or some other wrong." *Porter v.
> Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate
> unwarranted federal-court interference with the administration of
> prisons, and thus seeks to afford corrections officials time and opportunity
> to address complaints internally before allowing the initiation of a
> federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and
> citation omitted). "The benefits of exhaustion can be realized only if the
> prison grievance system si given a fair opportunity to consider the
> grievance." *Id*. at 2388.

> The PLRA mandates that inmates "properly" exhaust administrative
> remedies before filing suit in federal court. *Id*. at 2387. "Proper
> exhaustion demands compliance with an agency's deadlines and
> other critical procedural rules because no adjudicative system can
> function effectively without imposing some orderly structure on the
> course of its proceedings." *Id*. at 2386. Failure to substantially comply
> with the procedural requirements of the applicable prison's grievance
> system will result in a procedural default of the claim. *Spruill v. Gillis*,
> 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes
> a futility exception to its mandatory exhaustion requirement." *Nyhuis v.
> Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

> The PLRA's exhaustion requirement was designed to reduce the quantity
> and improve the quality of prisoner lawsuits, as well as afford
> corrections officials an opportunity to address complaints internally
> before allowing the initiation of a federal suit. *Woodford*, 126 S.Ct.
> at 2387-88 ("The benefits of exhaustion can be realized only if the
> prison grievance system is given a fair opportunity to consider the
> grievance."). The PLRA exhaustion requirement is satisfied if the
> Plaintiff files a grievance and appeals the denial of the grievance to
> the highest level possible, giving the prison "fair notice" of the
> claim and an opportunity to remedy it. To provide fair notice of a

31

claim, the plaintiff must allege specific acts of mistreatment or
misconduct and identify the responsible party or parties.  *See Pack v.
Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d
503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir.
2003).  Although neither the Third Circuit Court of Appeals nor the
Supreme Court has defined how specific an inmate's administrative
grievance must be to place the prison on "fair notice" of a claim
prior to pursuing it in federal court, the Supreme Court has held that
the prisoner's compliance with the agency's applicable administrative
remedy process should be the yardstick for making such an assessment.
*Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

As in the *Fortune* case, it is clear that Plaintiff Plaster's March 12, 2006 grievance was not

sufficient to put the DOC officials on notice and to give them an opportunity to address Plaintiff's

present Eighth Amendment claims against Medical Defendants.  Further, as in *Buehl*, Plaintiff Plaster

procedurally defaulted his Eighth Amendment claims against Medical Defendants since they were

not specifically named in the March 12, 2006 grievance, and the time to file a grievance against

them has long passed.

We find that this case should be dismissed as to Medical Defendants for failure of Plaintiff

to exhaust his Administrative remedies against them before he filed this action based on *Ngo* and

*Fortune.  See also Farrell v. Beard*, 2006 WL 2828862 (M. D. Pa.); *Lasko v. Hendershot*, 2006 WL

2828787 (M.D. Pa.) (This Court dismissed Plaintiff's claims without prejudice his he failed to

exhaust his Administrative remedies prior to filing his action in federal court despite having

exhausted them while his action was pending).[25]

---

[25]As this Court in *Lasko* noted, since the exhaustion issue in our case is a threshold issue,
there is no need to consider the first argument in Medical Defendants' Motion to Dismiss, *i.e.*
failure to allege that they knew their conduct presented a substantial risk of harm to Plaintiff.

Thus, we shall recommend that Medical Defendants' Motion to Dismiss be Granted. (Doc. 29).[26]

### B. Corrections Defendants' Motion to Dismiss (Doc. 34)

Corrections Defendants (Kneal and Malewski) argue that Plaintiff has failed to state an Eighth Amendment claim against them since it is not alleged that they were deliberately indifferent to his serious medical needs. They state that the gravamen of Plaintiff's Complaint is that he disagrees with the treatment he received for his knee condition, and not that he was denied medical care by them. (Doc. 35, p. 4).

Plaintiff claims that Defendant Malewski, former Health Care Administrator ("HCA") at SCI-Frackville, denied his requests for a proper knee brace to stop his knee from dislocating, and which brace he claimed was ordered by a doctor, and that this Defendant denied him physical therapy for almost one month until he filed a grievance and it was ordered by the doctor. (Doc. 1, ¶'s 4., 16. and 19.). Plaintiff averred that his dislocating knee has caused him severe pain and suffering,

_See Lasko v. Hendershot_, 2006 WL 2828787 at * 5, n. 3.

[26]Plaintiff's recent Motion to Stay (Doc. 89) in which Plaintiff claims that he needs four confiscated items to file his combined supplemental opposition brief to both sets of Defendants' Motions to Dismiss does not indicate that he needed any document relevant to Medical Defendants' exhaustion argument contained in their Brief. In fact, Plaintiff had all of the relevant exhaustion documents when he filed his original Complaint as demonstrated by his exhibits attached to his Complaint, which exhibits Medical Defendants have relied upon. Further, as stated above, on May 8, 2007, we denied Corrections Defendants' Motion to Stay Discovery and granted, in part, Plaintiff's Motion to Compel Discovery and directed, in part, that Defendants provide Plaintiff with copies of his grievances and responses thereto relating to his medical treatment for his knee condition and his present Eighth Amendment claims. (Doc. 65, p. 5). Additionally, Plaintiff has not explained why he did not mention the Medical Defendants in his grievance. In fact, as stated, Plaintiff's March 12, 2006 grievance indicated that the security department was at fault for his problems in not allowing him to have the proper knee brace, and not Medical Defendants. (Doc. 32, Ex. C).

and that he had a mobility problem for a year.  Plaintiff alleged that the refusal to properly treat his knee condition has caused him lasting damage.  (*Id.*, ¶ 20.).

Plaintiff states (and his exhibits show) that Defendant Kneal was the security captain who prevented the prison medical staff from giving him the proper knee brace ordered by the doctor since it was alleged to be a security risk due to its metal hinges or inserts used to support the hinged knee stabilizer brace.  Plaintiff indicates that he requested a knee brace with plastic inserts.  (Doc. 1, Exs. A-1 & A-6).  Plaintiff's exhibits show that he was offered on at least two occasions a knee brace for his knee condition and that the medical staff found the offered braces to be proper for his condition, but Plaintiff refused both braces, claiming that they were knee cap braces instead of a knee stabilizer brace.  (*Id.*, A-6).

Corrections Defendants correctly state (Doc. 35, p. 3) that Plaintiff's exhibits show that, on two occasions, he was provided with a knee brace which the medical staff found to be appropriate for his knee condition, but that Plaintiff refused them since he did not think the braces (knee cap stabilizer braces) were adequate to prevent his knee from dislocating.  As stated above, Plaintiff also averred that he tried one of the braces and that his knee continued to repeatedly dislocate. Defendants argue that Plaintiff's Eighth Amendment claims against them should be dismissed since he does not allege that they were deliberately indifferent to his serious medical needs.  Plaintiff's exhibits also show that he refused one brace on August 10, 2005, which was a stabilizer brace for his knee with extra padding for his patella.  Prison staff recommended, in response to Plaintiff's Inmate Requests, that Plaintiff try the knee brace which was provided to him on August 10, 2005. Plaintiff was given another knee brace, a new and different one, on January 9, 2006, and on

January 16, 2006, he filed an Inmate Request claiming that he needed a knee stabilizer brace and not the knee cap brace that he was issued.  Staff recommended that Plaintiff try the new brace for a longer period than six (6) days, *i.e.* January 9, 2006 to January 15, 2006.  Plaintiff filed another Inmate Request on January 26, 2006, and he stated that he received another type brace (seemingly on January 9, 2006), and that the knee stabilizer brace was not the type the doctor told him he needed.  In this Request, Plaintiff also stated that he was having a problem with Defendant Malewski.  Defendant Malewski responded to this Request and stated that Plaintiff was given a brace on January 12, 2006, and that she investigated his concern and obtained the new brace from the vendor.  Plaintiff submitted another Inmate Request on May 20, 2006.  Plaintiff stated that "I have a security problem.  I need a hinged stabilizer for a lose knee problem and medical has tryed (sic) to order it for me two times.  The doctor, Ms. Malewski, Mr. Crup is telling me security will not allow the brace into Frackville.  I need the brace they are treating me with a none (sic) proper brace ... ."  (Doc. 1, Exs. A-1, A-2, A-6, A-7 & A-25).[27]

   Plaintiff readily admits that he received treatment for his knee condition, and his exhibits show this, but he alleges that since Defendants did not allow him to have the hinged stabilizer knee brace for his loose knee condition, he suffered numerous knee dislocations.  As a result, Plaintiff claims that Corrections Defendants violated his Eighth Amendment rights.  Corrections Defendants argue that Plaintiff's allegations are that he disagrees with the treatment he was receiving for his

---

[27]We again note that, in Plaintiff's March 12, 2006 grievance and his Inmate Requests, he indicated that the prison security department would not let him have the prescribed knee brace, and that Medical Defendants tried to order him the proper knee brace.  Thus, even if Plaintiff did exhaust his administrative remedies with respect to Medical Defendants, his own exhibits show that they did not violate his Eighth Amendment rights.

knee condition.  (Doc. 35, p. 4).  Plaintiff argues in his Brief (Doc. 50, p. 5) that Defendant Kneal was responsible for preventing him from receiving the proper brace for security reasons.  Plaintiff states that he "complains due to all Defendants he was provided with a different kind of a brace not ordered by physicians which Plaintiff believes (sic) to be inferior to his serious medical needs." *(Id.)*.

As both Plaintiff (Doc. 39, pp. 3-4 and Doc. 50, pp. 5-6) and Corrections Defendants recognize (Doc. 35, pp. 8-9), "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976).  An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner.  *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992).  The official must know of and disregard an excessive risk to inmate health or safety.  *Farmer,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.  "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States* ex. rel. *Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).[28]

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987), the court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation. The *Monmouth County* case stated that:

> "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is' one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

---

[28]We previously noted that Plaintiff's Eighth Amendment claims may be suspect, insofar as he acknowledges that he was receiving medical treatment for his left knee condition, including a recent January 30, 2006 MRI, and that he received knee braces, two times (August 10, 2005 and January 9, 2006) despite his claim that he needed a special hinged stabilizer knee brace. We also noted that Plaintiff's claim that he did not receive the type knee brace he felt was required in light of the fact that he was receiving medical care and received a knee brace with a stabilizer and with extra padding for his patella, may later (*i.e.* summary judgment stage) preclude a finding of deliberate indifference by the Corrections Defendants. *See Anderson, supra* (This court granted BOP Defendants' summary judgment motion against inmate Plaintiff asserting Eighth Amendment claim that Defendants misdiagnosed his left knee problem and record showed Plaintiff received extensive medical care).

recognize the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp.
456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981); *accord*
*Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). The seriousness of an
inmate's medical need may also be determined by reference to the effect of
denying the particular treatment. For instance, *Estelle* makes clear that if
'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290,
results as a consequence of denial or delay in the provision of adequate medical
care, the medical need is of the serious nature contemplated by the eighth amendment.
*See Id*, at 105, 97 S.Ct. at 291. In addition, where denial or delay causes
an inmate to suffer a life-long handicap or permanent loss, the
medical need is considered serious. (*Citations omitted*)."

*Monmouth County,* 834 F.2d at 347(3d Cir. 1987).

During our initial screening of Plaintiff's Complaint under the PLRA, we found that Plaintiff met the first hurdle of *Estelle, i.e.,* Defendants were deliberately indifferent to his medical needs, since he alleged that Defendants Kneal, Malewski, Dr. Sterling, PA Slivka, and PA Ellesworth denied him required medical care or were responsible for failing to provide with the proper hinged stabilizer knee brace for his left knee dislocating problem. *See Hampton*, 546 F. 2d at 1081. Plaintiff also alleged that Defendants Slivka and Malewski denied him required therapy for nearly one month until a doctor ordered it after he filed a grievance. Plaintiff did not allege any harm caused by this almost one month delay in physical therapy. (Doc. 1, ¶ 19.). Plaintiff now argues that the medical staff and security staff, including Defendant Kneal, are blaming each other for the denial of his prescribed medical care, *i.e.* the hinged stabilizer knee brace. (Doc. 50, p. 6). However, Plaintiff's exhibits show that he was ordered a knee stabilizer (the type he claims was the proper one) on August 5, 2005, and that it was denied by security on August 10, 2005. (Doc. 1, Ex. A-32). Plaintiff was given another type of knee stabilizer on August 10, 2005, but he claims that it was not the proper type to alleviate his knee from dislocating. (*Id*.). As mentioned, the record

shows that Plaintiff was also provided with a knee brace on or about January 9, 2006, but he again claimed that it was not the proper type to support his loose knee.

In *Monmouth, supra,* 834, F. 2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent loss." We previously found that Plaintiff alleged severe pain and suffering for a year as a result of the stated Defendants' refusal to provide him with the proper knee brace based on his claim that the security department would not allow it. Plaintiff claimed that the Defendants were responsible for his knee's dislocation 11 times in a year due to their refusal to give him the proper knee brace, and he claimed that his knee gave out with the knee brace he was provided (*i.e.* not the proper knee brace). (*Id.*, ¶ 17.).[29]

---

[29]In his Declaration submitted in support of his opposition to Defendants' Motions to Dismiss (Doc. 40), Plaintiff avers that Medical Defendants indicated in his medical file that he was denied the proper knee brace by security on August 10, 2005, and that security personnel, including Defendant Kneal, have stated that they have no documentation from medical that he requires a specialized knee brace. (*Id.*, p. 2). Plaintiff also avers that his chronic left knee condition is serious since his knee swells and is very painful, with limited motion. He states that his knee goes out and sprains, which causes him "severe torturing pain." (*Id.*). Plaintiff avers that he was recommended for MRI follow up after his January 30, 2006 MRI, but never received it. (*Id.*). However, since Plaintiff's Declaration is outside of the pleadings, it cannot be considered for purposes of the present Motions to Dismiss. Nonetheless, since Plaintiff's Declaration, for the most part, is similar to his allegations in his Complaint, and his averments in the Declaration are largely supported by the exhibits attached to his Complaint, we have considered these averments. For example, Plaintiff's Ex. C-1 attached to his Complaint is his January 30, 2006 MRI report. It was recommended that a "follow-up direct MR arthrography of the knee" be conducted. (Doc. 1, Ex. C-1, p. 2, Impression). We also note that Plaintiff's January 30, 2006 MRI report clearly indicates that his left knee condition is not a life threatening condition, as he avers it is in his Declaration. Plaintiff avers that his "chronic knee that goes out is life threatening" and that he was denied follow up MRI. (Doc. 39, p. 3, ¶ 8.). The January 30, 2006 MRI report indicates that Plaintiff's ACL was grossly intact but appeared to be attenuated, which suggested laxity from a prior ACL injury. (Doc. 1, Ex. C-1, p. 3, Impression). Plaintiff also avers that he was told that his proper brace was denied due to the concerns of the

Taking all of the allegations of Plaintiff as true, as we must at this juncture, we find that he establishes legally sufficient Eighth Amendment claims against Defendants Kneal and Malewski in this case. Plaintiff had a serious left knee condition, and he alleges that Corrections Defendants were deliberately indifferent to it by denying him the prescribed knee brace, by denying him physical therapy for about one month, and by not following up on the MRI recommendations for a further objective medical test. We disagree at this point with Defendants (Doc. 35, pp. 9-10) that Plaintiff simply disagrees with the type of knee brace he was offered. Plaintiff alleges that the knee braces he was offered were not the type the doctor prescribed and that he tried one of them, but it did not prevent his knee from repeatedly spraining and dislocating. He avers that his chronic knee condition continued to cause him pain for a substantial period of time, and that Corrections Defendants were aware of it and did not allow him to receive the proper brace. We do not construe Plaintiff as alleging that he was given the proper type of knee brace in a non-metal form, as Corrections Defendants assert. We deem Plaintiff as alleging, and we find Plaintiff's exhibits as showing, that he was given the wrong type of knee brace. In any event, since it is not clear if the knee braces offered Plaintiff on two occasions were proper for his medical condition, we shall recommend that Corrections Defendants' Motion to Dismiss be denied.[30]

---

security department, but he states that security staff, including Defendant Kneal, stated that they did not have any document from medical staff that he needed a specialized brace for his knee. (Doc. 40, p. 2). Plaintiff's exhibit B-3 attached to his Complaint is Superintendent Shannon's Response denying Plaintiff's appeal of Grievance No. 146235. Shannon stated that the security department did not override the opinion of the medical department and that the medical department determines his medical needs.

[30]Since we recommend the denial of Corrections Defendants' Motion to Dismiss, there will be no prejudice to Plaintiff with respect to the denial of his Motion to Stay (Doc. 79) regarding these two Defendants.

Thus, we shall recommend that this case proceed only with respect to the stated two Corrections Defendants since the Plaintiff has alleged their deliberate indifference to his serious medical condition under the Eighth Amendment.[31]

Defendants also argue that, since Plaintiff alleges, and his exhibits show, that he was prevented from receiving the type of knee brace he claims was required and prescribed for his knee condition based upon security reasons, the test of *Turner v. Safley*, 482 U.S. 78 (1987), should be applied.  (Doc. 35, p. 6).  Plaintiff also recognizes that the *Turner* test is used to determine if a prison regulation is valid.  (Doc. 50, p. 6).[32]

However, based on Plaintiff's pleading and his exhibits, it is not clear if the security department advised the medical department that Plaintiff could not have the hinged knee stabilizer brace or if the brace was denied Plaintiff since the medical staff provided him with a brace they felt was proper to meet his medical needs.  As stated, Plaintiff's Exhibit B-3 attached to his Complaint

---

[31]Corrections Defendants, at a later stage of the case, may certainly renew their present argument, in a summary judgment motion, after they present medical evidence regarding Plaintiff's knee condition and the need for the hinged knee stabilizer brace as opposed to the knee braces he was provided twice.  Defendants, through discovery, will be able to examine if there is any medical evidence that Plaintiff required a hinged knee stabilizer brace for his alleged chronic knee impairment which allegedly continually dislocated and caused him constant spraining and pain.  At this stage of the case, is not clear who determined that Plaintiff should not receive the  hinged knee stabilizer brace and if it was denied him due to medical reasons or due to security reasons.

[32]Again, based on Plaintiff's brief in opposition to Corrections Defendants' Motion to Dismiss, we fail to see why he needed any of the items allegedly taken from him described in his Motion for a Stay and Brief.  (Docs. 89 and 90).  We also fail to see why Plaintiff could not timely file his supplemental combined opposition brief in light of both sets of Defendants' arguments and the fact that Plaintiff had all of the documents he needed to respond to them when he filed his Complaint.  In any event, we have found that Plaintiff's opposition Briefs which he has filed adequately address all of the arguments raised by both sets of Defendants in their Motions to Dismiss.  (Docs. 39 and 50).

is Superintendent Shannon's Response denying Plaintiff's appeal of his Grievance No. 146235. Shannon stated that the security department did not override the opinion of the medical department and that the medical department determines his medical needs, and "no one else". Thus, we find it premature in this case to apply the *Turner* test with respect to any security regulation that may have prevented Plaintiff from receiving the stabilizer knee brace due to the metal in it, since it is not clear at this juncture of the case if the knee brace was denied Plaintiff due to security reasons or due to medical reasons that it was not required. Plaintiff also alleges that the security staff denied that there was any document from the medical staff indicating that he required a special knee brace, and he has claimed that the prison staff altered his medical records. Moreover, in his numerous Inmate Requests attached to his Complaint, Plaintiff repeatedly asked for the prescribed stabilizer knee brace with plastic inserts or hinges instead of the metal ones. Corrections Defendants do not state that Plaintiff was offered the prescribed stabilizer knee brace with plastic inserts. Rather, they state that Plaintiff was provided with another type of non-metal brace, but Plaintiff alleges it was not the correct type of brace. (Doc. 35, pp. 6-7)

In any event, we do not address the *Turner* test at this point since it simply is not clear if Plaintiff was denied the knee brace he claims was prescribed and medically necessary due to security reasons or due to medical reasons. It is also not clear if Plaintiff was given an alternative knee brace that was the type he claims was prescribed by the doctor and was needed to stop his chronic knee sprains and dislocations. Plaintiff alleges that the types of knee braces he was offered on two occasions were not the proper type, and that he continued to request the proper type with plastic hinges or inserts. Defendants do not argue that the type knee brace which Plaintiff claimed

was prescribed by the doctor and was medically necessary to alleviate his pain was dangerous if it had plastic inserts or hinges as opposed to the metal ones. (*Id.*).

Thus, we shall recommend that the Motion to Dismiss of Corrections Defendants **(Doc. 34)** (Kneal and Malewski) be denied, and that this case proceed as against these two Defendants with respect to Plaintiff's Eighth Amendment claims. Additionally, we will recommend that Plaintiff's Motion to Stay his opposition brief **(Doc. 79)** be denied. It will be further recommended that this case be remanded to the undersigned for further proceedings, including directing Corrections Defendants to answer Plaintiff's Complaint.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that the Motion to Dismiss of Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth **(Doc. 29)**, be granted and that these three Defendants be dismissed entirely from this action. It is also recommend that the Motion to Dismiss of Corrections Defendants (Kneal and Malewski) **(Doc. 34)** be denied, and that this case proceed as against these two Defendants with respect to Plaintiff's Eighth Amendment claims. Additionally, we recommend that Plaintiff's Motion to Stay his opposition brief **(Doc. 79)** be denied. We recommend that Plaintiff's third request for Relief of Copies and Mailing Money

Charges **(Doc. 90, p. 4)** be denied.  Finally, we recommended that this case be remanded to the undersigned for further proceedings, including directing Corrections Defendants to answer Plaintiff's Complaint.


                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: July 24, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD PLASTER,          :     CIVIL ACTION NO. **3:CV-06-1655**
                      :
        Plaintiff     :     (Judge Munley)
                      :
        v.        :     (Magistrate Judge Blewitt)
                      :
JEFFERY BEARD, SECRETARY OF THE  :
PENNSYLVANIA DEPARTMENT OF    :
CORRECTIONS, et al.,      :
                      :
        Defendants   :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 24, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                                    **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**


**Dated: July 24 2007**