IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, SECRETARY OF THE | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Ronald Plaster, formerly an inmate at the State Correctional Institution at Frackville ("SCI-Frackville")[1] originally filed, *pro se*, this  civil rights action, pursuant to 42 U.S.C. § 1983, on August 23, 2006, naming as Defendants ten (10) individuals employed by the Pennsylvania Department of Corrections ("DOC").  Nine Defendants were employed at SCI-Frackville, and one

---

[1]Plaintiff also filed a Motion for Leave to File an Amended Complaint on September 3, 2006.  (Doc. 11).  Plaintiff sought to add as a Defendant Donna Jones, acting Correctional Health Care Administrator ("HCA") at SCI-Frackville.  We granted Plaintiff's Motion and directed the Clerk of Court to add Defendant Jones as a party Defendant in place of Defendant Prison Health Care Provider, which was named in the original Complaint.  (Doc. 15).  Plaintiff's Motion for Leave to Amend indicated that Ms. Jones was the Correctional Health Care Administrator, and thus, we directed the Clerk of Court to substitute Defendant Jones for Defendant Prison Health Care Provider.  Plaintiff's Motion for Leave to Amend contained only the claims against Defendant Jones and thus, we considered the Motion as a supplement along with the original Complaint during our screening under the PLRA.

Plaintiff filed a change of address notice indicating that on September 27, 2007, he was transferred from SCI-Frackville to SCI-Graterford.  (Doc. 110).  All of Plaintiff's present claims relate to his confinement at SCI-Frackville.

Defendant was Secretary of the DOC.  (Doc. 1).  Plaintiff also filed two motions for leave to proceed *in forma pauperis*. (Docs. 2 and 9).   Further, Plaintiff filed a Motion for Relief of Copies and Services.  (Doc. 4).  Plaintiff requested  this Court to direct the Clerk of Court to accept only a single copy of all of his future filings in this case and for the Clerk of Court to serve Defendants with all of his filings in this case.  We denied Plaintiff's stated Motion (Doc. 4) by separate Order. (Doc. 16).  We also denied Plaintiff's second Motion for Relief of Copies and Service.  (Doc. 25).

We screened Plaintiff's original Complaint pursuant to the PLRA.  On September 20, 2006, we issued a Report and Recommendation ("R&R") in which we recommended that Defendants Beard, Shannon, Lamas, Jones and Reichner be dismissed entirely from this action under 28 U.S.C. §1915(e)(2)(B)(ii).  We also recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.  Further, we recommended that Plaintiff's claims for specific monetary damages in his pleadings be stricken.   Furthermore, it was recommended that Plaintiff be permitted to proceed with respect to his Eighth Amendment claims against Defendants Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth.[2]  It was also recommended that the matter be remanded to the undersigned for further proceedings.[3]  (Doc. 14).

On December 27, 2007, the District Court entered a Memorandum and Order adopting our R&R.  (Doc. 23).  We then granted Plaintiff's *in forma pauperis* Motions and directed the Clerk of Court to serve Plaintiff's Complaint and discovery request on the five remaining Defendants,

---

[2]Defendants Kneal and Malewski are the Corrections Defendants, and Defendants Sterling, Slivka and Ellesworth are the Medical Defendants.

[3]We have been assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1).

namely, Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth. (Doc. 26). Summons was issued and counsel for Defendants Dr. Sterling, PA Slivka and PA Ellesworth ("Medical Defendants") entered an appearance. (Doc. 28). On January 30, 2007, Medical Defendants jointly filed a Motion to Dismiss the Complaint. (Doc. 29). On February 6, 2007, counsel for Defendants Kneal and Malewski ("Corrections Defendants") entered an appearance. (Doc. 31).[4] On February 13, 2007, Medical Defendants filed their Brief in Support of their Motion to Dismiss with Exhibits. (Doc. 32). On February 20, 2007, Corrections Defendants jointly filed a Motion to Dismiss and a Support Brief. (Docs. 34 and 35). After being granted an extension of time, Plaintiff filed a Brief in Opposition to the Motion to Dismiss of Medical Defendants along with his Declaration. (Docs. 39 and 40, respectively).

On March 14, 2007, Plaintiff filed a Motion for Extension of Time to file his Opposition Brief to Corrections Defendants' Motion to Dismiss. (Doc. 49). Also, on March 14, 2007, Plaintiff filed his Response Brief with Exhibits to Corrections Defendants' Motion to Dismiss. (Doc. 50). Defendants' Motions to Dismiss were filed January 30, 2007 and February 20, 2007, and Plaintiff filed his opposition Briefs to both Motions.

On July 24, 2007, we issued an R&R and recommended that the Motion to Dismiss of Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth (Doc. 29), be granted and that these three Defendants be dismissed entirely from this action. It was also recommended that the Motion to Dismiss of Corrections Defendants (Kneal and Malewski) (Doc. 34) be denied, and that this case

---

[4]New counsel for Corrections Defendants entered an appearance on May 9, 2007, Doc. 67.

3

proceed as against these two Defendants with respect to Plaintiff's Eighth Amendment claims. Additionally, we recommended that Plaintiff's Motion to Stay his opposition brief (Doc. 79) be denied. We recommend that Plaintiff's third request for Relief of Copies and Mailing Money Charges (Doc. 90, p. 4) be denied. Finally, we recommended that this case be remanded to the undersigned for further proceedings, including directing Corrections Defendants to answer Plaintiff's Complaint. (Doc. 95).

Plaintiff filed objections to our R&R, as well as a Motion for leave to file an Amended Complaint. (Docs. 97 and 102). On October 18, 2007, the District Court issued a Memorandum and Order granting Plaintiff's Motion for Leave to File an Amended Complaint and denying as moot the Motions to Dismiss of the Medical Defendants and the Correction Defendants. (Doc. 111). Plaintiff's Amended Complaint was filed on October 18, 2007. (Doc. 112). Plaintiff's Amended Complaint named the five remaining Defendants in this case, *i.e.* Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth, and Corrections Defendants, Kneal and Malewski. On October 22, 2007, we issued an Order and directed the Clerk of Court to serve Plaintiff's Amended Complaint on the Medical Defendants and Corrections Defendants. (Doc. 113).

On November 29, 2007, Plaintiff filed his First Set of Interrogatories and Admissions addressed to Medical Defendants, and on December 3, 2007, Plaintiff filed his First Set of Interrogatories and Admissions addressed to Corrections Defendants. (Docs. 116 and 117). On December 19, 2007, Corrections Defendants jointly filed their Answer to Plaintiff's Amended Complaint with affirmative defenses. (Doc. 118). In response to the Amended Complaint, Medical Defendants filed a Motion to Dismiss on January 4, 2008. **(Doc. 120).** Medical Defendants also

filed their support Brief with exhibits on January 4, 2008. (Doc. 121). After being granted extensions of time, Plaintiff filed his Brief in opposition to the Medical Defendants' Motion to Dismiss and exhibits on March 10, 2008. (Docs. 134 and 135).

On February 4, 2008, Plaintiff filed a Motion to Compel all Defendants, *i.e.* both Corrections Defendants and Medical Defendants, to answer his Interrogatories and Admissions which he filed. Plaintiff also again requested that Medical Defendants' Motion to Dismiss be stayed until he received Defendants' answers to his discovery requests. (Doc. 126). This Court, on January 8, 2008, denied Plaintiff's first Motion to Stay. (Doc. 123). We shall recommend that Plaintiff's Motion to Compel (Doc. 126), insofar as it also contains a second Motion to Stay, be denied based upon the reasons detailed in our January 8, 2008 Order. Plaintiff's Motion to Compel has been briefed by Plaintiff and all Defendants. (Docs. 127, 128, 129, 130, 136 and 137).

We shall first consider Plaintiff's Motion to Compel and then Medical Defendants' Motion to Dismiss.

## II. Allegations of Complaints.

In his original pleading, Plaintiff alleged that he had a chronic dislocating left knee and loose knee problem, and that a hinged stabilizer brace was ordered by a doctor to treat this condition. Plaintiff claimed that all of the Defendants violated his Eighth Amendment right to proper medical care by not giving him the correct brace for his knee due to alleged security concerns over the proper brace. Plaintiff admitted that he was offered (on two occasions) another type knee brace, but claimed that he would not sign a waiver for it since it was not the proper brace which the doctor had ordered.

5

Plaintiff averred that on July 29, 2005, he was seen by Defendant Physicians Assistant ("PA") Ellesworth for complaints about his left knee dislocating. Plaintiff stated that Defendant Ellesworth examined and treated him by giving him an Ace wrap. Plaintiff stated that it was determined that a subsequent examination was required to see if he needed a brace. (Doc. 1, p. 5, ¶ 13.).

Plaintiff alleged that on August 5, 2005, he was given an examination by the medical staff in order to determine if he needed a brace for his dislocating knee. Plaintiff stated that, upon examination, it was found that he had a loose knee problem, and a hinged stabilizer knee brace was ordered. Specifically, Plaintiff stated that "examination revealed that Plaintiff has had past two surgeys (sic), ligament repaire (sic), cartilage repare (sic), clicking noted, crepitus, knee derament (sic), grinding, hing (sic) stabilizer ordered." (Id., ¶ 14.).[5]

Plaintiff averred that on August 10, 2005, he was sent to the medical department to pick up his hinged stabilizer brace, but he was given the wrong brace due to concerns regarding the hinged stabilizer brace by the security department head, namely, Defendant Captain Kneal. Plaintiff claimed that Defendant Kneal refused to obey the doctor's order, which was in a note in his medical records. Plaintiff stated that he refused to sign a waiver to receive the improper brace, which was offered to him in place of the hinged stabilizer brace. (Id., ¶ 15.).

Plaintiff alleged that Defendants Malewski, Prison Medical Director, Dr. Sterling, Prison Doctor, and former Defendant Ms. Lamas, Deputy Superintendent of Medical Department at the Prison, PA Slivka, and PA Ellesworth never issued a proper knee brace to stop his dislocating knee.

---

[5]The Briefs in support of the Motions to Dismiss the original Complaint filed by both Medical Defendants and Corrections Defendants contained a summary of Plaintiff 's initial allegations. (Doc. 32, pp. 2-3, and Doc. 35, pp. 2-4, respectively).

(*Id.*, p. 6, ¶ 16.).  He stated "their reason security will not allow them too."  We previously deemed Plaintiff as stating that he filed a grievance with respect to not being given the proper knee brace and that his grievance was resolved for the second time, but that he did not receive the proper brace.  (*Id.*). Plaintiff alleged that the Defendants were responsible for his knee dislocating eleven (11) times in one year and that this happened with the issued brace on his knee, but not the proper brace.  (*Id.*, ¶ 17.). [6]

Plaintiff stated that Dr. Salomon[7], along with Defendants  Dr. Sterling and PA Slivka, found that he did in fact have a dislocating knee and recorded this finding in his medical file.  (*Id.*, ¶ 18.).

Plaintiff averred that Defendants Slivka and Malewski denied him physical therapy for "nearly a month" but stated that it was ordered by the doctor after he filed a grievance. (*Id.*, ¶ 19.).

Plaintiff claimed that his dislocating knee has caused him severe pain and suffering as well as a mobility problem for a year, and he claimed that the refusal to treat his problem caused him lasting damage and injury.  (*Id.*, ¶ 20.).

In his Claims Section of his original pleading, Plaintiff generally stated that all Defendants violated his Eighth Amendment rights by depriving him of proper medical care for his serious medical need for his left knee condition.  (Doc. 1, pp. 7- 10). Plaintiff did not name the specific Defendants with respect to his generic claims. (*Id.*).  Plaintiff also claimed that his grievances were resolved but that they were not followed as directed, and that he did not receive proper medical

---

[6]While Plaintiff stated that he did not accept the offered substitute knee braces, he also seems to have stated that he had used one of the knee braces issued to him for at least one year, but that it did not stop his knee from dislocating.  (Doc. 1, ¶'s 15.-17.).

[7]Dr. Salomon was not named as a Defendant in either Plaintiff's original Complaint or his Amended Complaint. (Doc. 1 and 112).

care, since he did not get the proper knee brace.  (*Id.*, p. 10, ¶ 44. , 47.).  Plaintiff concluded that all named Defendants were sued for inadequate medical care.  (*Id.*, p. 11).

Plaintiff stated that he utilized the administrative remedies procedure available at the prison on March 12, 2006, in order to try and resolve his request for the proper knee brace for his dislocating knee problem, but stated that he was advised that the security department would not allow him to have the proper brace.  Plaintiff's grievance was denied, and he appealed to former Defendant Shannon, Superintendent at SCI-Frackville.  (*Id.*, p. 12).  Former Defendant Shannon denied Plaintiff's appeal.  Plaintiff stated that he appealed his grievance to the final grievance appeal and it was denied.

As Exhibits to his original Complaint, Plaintiff attached numerous Inmate Requests to Staff, Doc. 1, Exs. 1-34, as well as copies of his various grievances he filed with the prison.  Plaintiff attached the  responses to his Requests and grievances in which he claimed that he was not given a knee stabilizer brace.  Doc. 1, Ex. B.  Plaintiff also attached medical book pages regarding knee impairments, which he has highlighted, and a copy of his January 30, 2006 MRI report of his left knee.  Doc. 1, Ex. C.  Plaintiff further attached an original brochure for a hinged knee wrap which he indicated was needed for his knee condition.

Plaintiff's original exhibits indicated that he filed an Inmate Request to Staff on August 10, 2005, requesting a knee stabilizer, and that a response to this Request was written by former Defendant Jones, dated August 12, 2005, in which she indicated that PA Ellesworth's note stated that Plaintiff was given a brace which was a stabilizer with extra padding for his patella.  However, former Defendant Jones noted that Plaintiff refused this brace on August 10, 2005.  (Doc. 1, Ex. 1).

Plaintiff filed another Inmate Request to Staff on August 15, 2005, with former Defendant Reichner, his counselor, and in this Request Plaintiff stated that he had a chronic condition with which the PA said she could not help him. Former Defendant Jones responded to this Request on August 16, 2005, and stated that she recommended to Plaintiff that he try the offered knee brace which he had refused. Former Defendant Jones stated that she spoke to the PA and that the PA felt that the offered brace would help Plaintiff. (Doc. 1, Ex. 2). Plaintiff was advised that he could not choose the health care provider he wanted to see, and that all doctor referrals go through the PA. Plaintiff was instructed to sign up for sick call and to at least try the knee brace he was offered. (*Id*.).[8]

In his original Complaint, Plaintiff sued all Defendants in their individual and official capacities. Doc. 1, p. 1, pp. 3-5. As relief, Plaintiff sought injunctive relief, as well as $4 million in compensatory damages from each Defendant, $10 million for pain and suffering, $1 million for "any all types of damages." (Doc. 1, p. 13). Plaintiff also sought the Court to grant him a hinged stabilizer brace, a medical transfer to SCI-Mercer, and full medical coverage for the rest of his life. (*Id*.).

As mentioned, Plaintiff claimed that Defendant PA Slivka and Defendant Malewski denied him medical treatment in the nature of physical therapy for his dislocating knee problem, which he stated was recorded in his medical files, for almost one month. (Doc. 1, ¶ 19.). Plaintiff averred that Defendants Malewski, Dr. Sterling, PA Slivka and PA Ellesworth have not issued him the proper

---

[8]We previously considered all of Plaintiff's exhibits attached to his original Complaint for screening purposes. Even though we were only considering Plaintiff's Complaint under the standard for a Motion to Dismiss, we were allowed to consider documents referenced in Plaintiff's pleading upon which his claims are based. *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

knee brace required to prevent his left knee from dislocating based on their reason that "security [department] will not allow them too (sic)."  (*Id*., ¶16.).

Plaintiff averred that the stated actions of the Defendants amounted to deliberate indifference to his serious medical needs, and claims that his dislocating knee has caused him "severe pain, suffering, and mobility problem for a year" as well as "causing [him] lasting damage and injury."  (*Id*., ¶ 20.).

Plaintiff claimed  that the medical staff had  not yet issued him the proper knee brace due to security reasons.  Plaintiff raised  Eighth Amendment claims against Defendants for their direct or indirect refusal to provide him with a hinged knee stabilizer brace, which is a metal brace according to Plaintiff, Doc. 11, p. 3, ¶ 6., and his attached brochure, Doc. 1, Ex. C.  Plaintiff admitted that Defendants offered him another type knee brace and that he  refused it, and he claimed  that Defendants' refusal to provide him with the hinged brace was due to security reasons, *i.e*. apparently due to the metal hinges or inserts contained therein.[9]  Plaintiff claimed that the conduct of the Defendants in not giving him a hinged knee stabilizer brace and by not directing the medical staff to do so violated the Eighth Amendment.[10]

---

[9]As noted above, Plaintiff also seemed to indicate that he used another type of knee brace for one year but that his knee dislocated several times with it.

[10]We noted in our September 20, 2007 R&R that insofar as Plaintiff sought this Court to order his transfer to another State Correctional Institution (Doc. 1, p. 13), it was within the discretion of the Department of Corrections ("DOC") to designate the place of incarceration of inmates under its authority, and that inmates have no right to be confined in any specific prison and have no right to a transfer *See, e.g., Robinson v. Benson*, 570 F. 2d 920 (10th Cir. 1978) (Inmate has no right to choose his place of confinement and he may be transferred for any reason or no reason at all); *Olim v. Wakinekona*, 461 U.S. 238 (1983).  We also noted that judicial review of an administrative decision by the DOC, such as whether to transfer a prisoner to another institution or whether to remove an inmate from the RHU back to general

Plaintiff sued all of the Defendants in their individual capacity and in their official capacity with respect to his request for monetary damages (*i.e.*, compensatory and punitive). Plaintiff indicated that he exhausted his administrative remedies regarding his claim that he was denied the proper knee brace for his dislocating knee problem. (Doc. 1, ¶ 59.). We previously stated that Plaintiff's original Complaint and his exhibits indicated that he filed grievances regarding his Eighth Amendment claims.

We found that Plaintiff's original Complaint as against the five remaining Defendants should proceed since their personal involvement was sufficiently stated with respect to the Eighth Amendment claims Plaintiff alleged. Plaintiff alleged that these Defendants participated in the decision to deny him the hinged knee stabilizer brace he needed for his serious conditions due to security reasons. Plaintiff stated that he was advised that the security department at the prison that would not allow his proper knee brace since that type with hinges or metal inserts was not allowed in a state prison.[11]

---

population, was limited to whether there is a denial of due process or a clear showing of arbitrary and capricious action. *See Marchesani v. McCune*, 531 F. 2d 459 (10th Cir. 1976), *cert. denied*, 429 U.S. 846.

[11]Plaintiff's Exhibits attached to his original pleading indicated that Plaintiff was advised by former Defendant Shannon, in response to his grievance, that the prison security department did not override the opinion of the Medical Department as to Plaintiff's medical needs. (Doc. 1, Ex. B-3). We previously noted that Plaintiff's final appeal of his grievance No. 146235 was dismissed as untimely. (*Id.*, Ex. B-4). We also noted that according to Plaintiff's January 2006 MRI of his left knee, he seemed to have tears on his medial meniscus as well as chondromalacia. According to *Stedman's Medical Dictionary,* 27th Ed. at 341, "Chrondromalacia" is defined as the softening of any cartilage. Plaintiff also had a prior ACL injury. (*Id.*, Ex. C-1).

As stated, in reviewing the original Complaint under 28 U.S.C. §1915(e)(2)(B), we found that the Plaintiff was unable to maintain his action as against Defendants Beard, Shannon, Lamas, Jones and Reichner.  Specifically, we found that Defendants Beard, Shannon and Lamas lacked sufficient personal involvement in this case.  We found that these Defendants, by failing to direct their subordinates to provide Plaintiff with the knee brace he claims was proper for his dislocating left knee and by Shannon denying Plaintiff's grievance, were not sufficiently involved in this case.  We found that Plaintiff's request for monetary damages against Defendants in their official capacities should be dismissed.  Further, as noted above, we found that Plaintiff's request for specific money damages should be stricken from the original Complaint.  The District Court agreed with our recommendations.  (Docs. 14 and 23).

As stated, in his Amended Complaint, Plaintiff named as Defendants the five remaining Defendants, namely, Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth, and Corrections Defendants, Kneal and Malewski.  (Doc. 112).  Plaintiff has again sued all Defendants "individually and in his and her official, individual, and personal capacity." (*Id.*, p. 2, ¶ 9.).  Plaintiff again requests monetary damages, both compensatory and punitive damages, from all Defendants. (*Id.*, pp. 8-9).  To the extent that Plaintiff sues Defendants in their official capacities and seeks monetary damages against them, this claim should be dismissed since it is barred by the Eleventh Amendment.  Plaintiff's Amended Complaint is clearly not ambiguous as to the capacities in which he sues Defendants.  (*Id.*, p. 2).  Thus, insofar as Plaintiff is seeking monetary damages from Defendants in their official capacities, such a claim is  barred under the Eleventh Amendment.  *See Melo v. Hafer*, 912 F. 2d 628, 635 (3d Cir. 1990); *Atwell v. Schweiker*, Appeal No. 06-3455, slip

op. p. 3 (10-4-07), 2007 WL 2900565, * 1 (3d Cir. 2007) (Non-Precedential).

The *Atwell* Court stated:

> The Eleventh Amendment bars a suit against state officials sued
> in their official capacities because the state is the real party in
> interest inasmuch as the plaintiff seeks recovery from the state
> treasury. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).  The
> Eleventh Amendment does not bar suits against state officials
> in their personal capacities.  *Id.*

*Id.*, *1.

Plaintiff cannot sue any of the five Defendants for money damages in their official capacities, and he cannot get punitive damages against Defendants in their official capacities.  Plaintiff can only sue Defendants for money damages, including punitive damages, in their personal capacities.

Plaintiff alleges in his Amended Complaint that Defendants denied and delayed his required medical care by preventing him from receiving a knee stabilizer ordered by medical staff which caused him to require treatment for an unstable knee and caused him severe pain and suffering which resulted in physical injury and future harm in the nature of crippling effects. (*Id.*, p. 2, ¶ 10.).

In his Amended Complaint, Plaintiff also alleges:

> Medical personnel(s) (sic) have claimed that the security department
> personnel has prevented medically ordered brace for a serious medical
> need causing pain and suffering for a life threatening illness of a knee.

> Denial and delay of medical M.R.I. recommended by MRI specialist
> 1-30-06 over 15 months ago for a serious medical need of the knee
> of life threatening tourn (sic) cartilage recommended more MRI for
> determination.

> Physical therapy denied and delayed over matters of the knee ordered
> by Doctor Sterling and Herb Ferry and S.C.I. Frackville is not set up for
> physical therapy.

13

(*Id.*, pp. 2-3, ¶'s 11.-13.).

Plaintiff alleges that the prison Medical staff have all diagnosed his unstable knee condition and have found that the required treatment is a knee stabilizer brace with hinges.  However, Plaintiff avers that his needs for his serious knee condition are not being met by Defendants since he is not being given the stated type of knee brace which physicians have ordered for him.  Plaintiff states that as a result, he has suffered knee sprains, his knee gives out, and he has been caused pain and suffering.  (*Id.*, p. 4, ¶'s 29.-34.).  Plaintiff avers that Defendants Sterling and Slivka withheld documents from his prison Medical file when he was referred to orthopedist Doctor Girton and that this specialist did not know of Plaintiff's chronic history of his knee problems, including his knee spraining and going out.  (*Id.*,p. 5).  Plaintiff concludes:

> Plaintiff was diagnosed with a stability problem of the knee
> perminitly (sic) and required to have a knee hinged stabilizer
> tell [till] knee could be removed at the age 40 since the age 19
> with major surgies (sic) due to stability issues.

(*Id.*, p. 5, ¶ 37.).

Plaintiff states that he used and attempted to use the DOC Administrative Remedies available at the prison.  (*Id.*, p. 5, ¶ 38.).  Plaintiff raises numerous claims under the Eighth Amendment against the five Defendants.  (*Id.*, pp. 6-8, ¶'s 40.-53.).

As relief in his amended pleading, Plaintiff seeks declaratory judgment and injunctive relief as well as compensatory damages and punitive damages.  Plaintiff also requests that the Court grant him a knee hinged stabilizer brace, full medical coverage for his life, and a transfer to SCI-Mercer

14

level 2 R.  (*Id.*, pp. 8-9).[12]

The three Medical Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. 120).  The Corrections Defendants filed their Answer to Plaintiff's Amended Complaint.  Plaintiff filed a Motion to Compel all Defendants to answer his discovery requests and a second Motion for the Court to Stay its ruling on Medical Defendants' Motion to Dismiss until he receives his discovery responses.  (Doc. 126).  Plaintiff and Defendants have filed their respective  Briefs regarding both pending Motions.  Thus, Plaintiff's Motion to Compel/Motion to Stay and Medical Defendants' Motion to Dismiss are now ripe for disposition.

### III.  Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the Complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A Complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A Complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

---

[12]As noted above, Plaintiff was recently transferred to SCI-Graterford. (Doc. 110).  Also as noted, Plaintiff has no right to confinement in any particular prison.  Further, this Court cannot initiate federal criminal charges against Defendants as Plaintiff requests.  (Doc. 112, p. 9, ¶ 67.).  Also, as stated, Plaintiff is barred by the Eleventh Amendment from receiving monetary damages from Defendants in their official capacities.

**IV. Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[13]

The five remaining Defendants are DOC individuals employed at SCI-Frackville. Since the remaining Defendants have been stated above, we shall not reiterate their names.[14]

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case and that a Complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the Complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown

---

[13]Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[14]Since all of the individual Defendants are employees of the state, they are state actors for purposes of § 1983.

> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights Complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.  *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (*per curiam*) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

## V.  Discussion.

### A.  Plaintiff's Motion to Compel/Motion to Stay  (Doc. 126)

Defendants basically all state that they have properly responded to all of Plaintiff's discovery requests, and that they have properly objected to the discovery requests that are not relevant or that are protected from disclosure.  Plaintiff argues that all of his discovery requests seek relevant information and that all Defendants have failed to properly respond to them.  There is no dispute (and the exhibits of Defendants show) that both Corrections Defendants and Medical Defendants have responded to Plaintiff's discovery requests.

As the Court stated in *Koresko v. Bleiweis*, 2004 WL 2005785, * 1 (E.D. Pa.):

> The Federal Rules of Civil Procedure are liberal with respect to
> discovery, permitting the requesting party to obtain even inadmissible
> material, as long as it is relevant to the claim or defense of any party,
> unprivileged, and reasonably calculated to lead to the discovery of
> admissible evidence. Fed.R.Civ.P. 26(b)(1).
>
> Federal Rule 33 requires a party served with interrogatories to
> respond to each within 30 days after they were served.  Rule 33(b)(1)
> and (3).  The party serving the interrogatories may move under

Rule 37(a) to compel an answer to an interrogatory to which the receiving party has objected or which it has otherwise failed to answer.  Rule 33(b)(5).

Similarly, Federal Rule 34 requires that a party served with a document request either produce the requested documents or else state a specific objection for each item or category objected to.  Here, again, if the party served fails to respond adequately to a document request, the serving party may file a motion to compel under Rule 37(a).  Fed.R.Civ.P. 34(b), 37(a)(1)(B).

As the Court stated in *Paluch v. Dawson*, 2007 WL 4375937, * 1 (M.D. Pa.):

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial.  *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The polestar of discovery is relevance. Relevance for discovery purposes is defined broadly. The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller,* 211 F.3d 57, 65 (3d Cir.2000). Rule 26(b)(2) authorizes a court to limit discovery where (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The *Paluch* Court further stated:

Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure or discovery. The party seeking

18

the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner,* 553 F.Supp. 255, 258 (E.D.Pa.1982).

2007 WL 4375937, *2.

As mentioned, on November 29, 2007 and December 3, 2007, Plaintiff filed his First Set of Interrogatories and Admissions directed to Medical Defendants (Doc. 116) and Corrections Defendants (Doc. 117). Plaintiff did not serve the Defendants with his discovery requests as he was required to do. Plaintiff then filed a joint Motion to Compel and a Motion to Stay a decision with respect to Medical Defendants' Motion to Dismiss until he receives his responses to his discovery requests.[15] Plaintiff's Motion to Compel has been briefed, Docs. 126, 127, 128, 129, 130, 136 and 137).[16] We also consider Plaintiff's discovery requests, Docs. 116 and 117.

In his Motion to Compel, Plaintiff states that all Defendants have avoided responding to his discovery requests he filed by "filing objections in an evasive attempts." (Doc. 126, p. 1). Plaintiff also states that counsel for Medical Defendants has not allowed these three Defendants to answer his discovery requests under oath. (*Id*.).[17] Plaintiff argues that the submitted responses of all

[15]As stated above, we will recommend that Plaintiff's Motion (Doc. 126), insofar as Plaintiff again seeks a stay, be denied based on our January 8, 2008 Order (Doc. 123). Thus, we shall not discuss herein Plaintiff's Motion to Stay.

[16]Plaintiff filed separate Reply Briefs in response to Corrections Defendants' and Medical Defendants' opposition Briefs to his Motion to Compel, Docs. 136 and 137, respectively.

[17]To the extent that Medical Defendants did not attach Verifications to their respective Responses to Plaintiff's discovery requests. (Doc. 128, Ex. A), we shall direct them to submit Verifications with respect to their stated Responses, similar to Corrections Defendants' Verifications (Doc. 130, Exs. B and C), within in ten (10) days of this R&R.

Defendants are evasive in order "to avoid admitting to unconstitutional violations." (Doc. 127, p. 1).  Plaintiff claims that Corrections Defendants have responded to his discovery requests by stating that they were informed that Plaintiff's medical needs were being treated by Medical Defendants, and that Medical Defendants have refused to answer his discovery requests.  (*Id*.).  Plaintiff contends that he needs his discovery requests answered by Defendants to show that they thwarted his attempts to exhaust his DOC Administrative remedies and that he should be excused from the PLRA's exhaustion requirement due to the "bad faith attempts" by Defendants which caused his default in the grievance process.   (*Id*., p. 2).  Plaintiff argues that he has alleged that Medical Defendants have denied him physical rehabilitation and MRI's required for proper diagnosis and treatment of his knee condition, and that Corrections Defendants have denied this claim and Medical Defendants will not respond to his discovery requests. (*Id*.).

Plaintiff concedes that Corrections Defendants have responded to his discovery requests but he claims that they have  improperly "respond[ed] with nothing but 'Objections'." (*Id*., p. 4). Plaintiff states that all of the information  he seeks in his discovery requests is highly relevant to his Eighth Amendment claims, and that a stay of Medical Defendants' Motion to Dismiss is warranted until he receives proper responses to his requests.  (*Id*., pp. 4-5).

### 1.  *Medical Defendants*

In their opposition Brief to Plaintiff's Motion to Compel, Medical Defendants state that they sent Plaintiff responses to his discovery requests on December 28, 2007.  The responses of all three Medical Defendants to Plaintiff's discovery requests are attached to their Brief as Ex. A, Doc. 128. As Medical Defendants state, they did not object to all of Plaintiff's requests; rather, they simply

prefaced each of their responses with a general objection to all of Plaintiff's requests due to their obvious improper form, *i.e.* their compound sentence requests, and improper attempt to join both interrogatories together with requests for admissions.   Also, as Medical Defendants, their general objections to Plaintiff's requests were not objections to the substance of any of Plaintiff's requests. (Doc. 128, p.  2).

We also agree with Medical Defendants that Plaintiff does not contend that they failed to respond to his requests; rather, he claims that their responses are evasive "to avoid admitting to unconstitutional violations."   (Doc. 127, p. 1).   We have reviewed the responses of Medical Defendants to Plaintiff's discovery requests (Doc. 128, Ex. A) and agree with Defendants that they have provided Plaintiff with proper responses to his requests.  Simply because Plaintiff is dissatisfied with their responses in that they did not admit to engaging in any conduct which constituted a Constitutional violation does not entitle Plaintiff to the granting of his Motion to Compel.  We also agree with Medical Defendants that Plaintiff's general claim that he is not satisfied with their responses without specifying which responses are improper or insufficient and stating why, is not the basis for a Motion to Compel.  (Doc. 128, pp. 3-4).  Further, based on the responses of Medical Defendants to Plaintiff's discovery requests, we disagree with Plaintiff (Doc. 137, p. 4) and find no reason for the Court to stay its ruling on the pending Motion to Dismiss of these Defendants.

Plaintiff essentially claims  that Defendants' conduct in this case has amounted  to a "catch-22" in that Medical Defendants contend that the security department at the prison would not allow him to have what he alleges to be the proper medical treatment for his serious knee condition, *i.e.* a hinged metal stabilizer brace, and Corrections Defendants contend that the prison medical staff

Case 3:06-cv-01655-JMM   Document 139   Filed 04/29/08   Page 22 of 47


told them that Plaintiff received proper medical care for his knee condition. Plaintiff argues that "there ain't no way of telling who is telling the truth unless interrogatories and admissions are answered as asked." (Doc. 137, p. 5). Regardless of Plaintiff's claimed dilemma, we find that the responses of Medical Defendants to his discovery requests (Doc. 116) are proper, and shall recommend that Plaintiff's Motion to Compel as against these Defendants be denied. (Doc. 128, Ex. A).

    2. *Corrections Defendants*

    Corrections Defendants (Kneal and Malewski) have also submitted their responses to Plaintiff's discovery requests (Doc. 117) addressed to them. (Doc. 130, Exs. B and C). Defendant Kneal responded to the requests on December 28, 2007, and Defendant Malewski responded to them on January 25, 2008. As stated, Plaintiff argues that the responses of Corrections Defendants to his discovery requests are evasive and contain improper objections to his requests. (Doc. 127).

    We agree with Corrections Defendants (Doc. 129, p. 4) that their responses to Plaintiff's discovery requests and objections are proper. As Corrections Defendants argue (*Id*.), and as we have stated above, Plaintiff's contention is that Defendants have not provided him with answers that amount to admissions of Constitutional violations and that would show deliberate indifference on their part to his serious medical needs. (Doc. 127, p. 1). As discussed above, such a contention is simply not the basis for a Motion to Compel under Rule 37 seeking more specific responses to a party's discovery requests. Also, as Corrections Defendants point out (Doc. 129, p. 4), they objected to Plaintiff's interrogatories which sought information that was readily ascertainable from his prison medical records which were provided to him. We agree with Corrections Defendants

that since the stated requests of Plaintiff were duplicative and since he had his medical records, they properly objected to these requests.

We also find no merit to Plaintiff's claim that Corrections Defendants waived their right to object to Plaintiff's requests since he claims their responses were untimely.  As all Defendants state, Plaintiff himself caused a delay in their responses since he did not serve them with his discovery requests (Docs. 116 and 117) as required; rather, he simply filed them with the Court.  While Plaintiff states that he sent copies of his discovery requests to counsel for Corrections Defendants (Doc. 136, p. 2), neither of his requests contain Certificates of Service.  (Docs. 116 and 177).  The responses of Defendant Kneal were timely, and Plaintiff was advised that Defendant Malewski's responses would be delayed since she was no longer employed with the DOC.  (Doc. 129, p. 5). In any event, as Corrections Defendants state (Doc. 129, p. 5), Plaintiff has not shown any prejudice from any claimed delay with respect to his receipt of Defendants' discovery responses, especially since no discovery deadline has been set yet, and since the Court has not yet ruled on Medical Defendants' Motion to Dismiss.[18]

Plaintiff (Doc. 136, p. 4) argues that he needs more complete answers from Defendants and again refers to his "catch - 22" regarding his assessment of the alleged opposing positions of Corrections Defendants and Medical Defendants, *i.e.* Corrections Defendants claim that they relied upon the medical staff that Plaintiff was being treated properly, and Medical Defendants claim that

---

[18]As mentioned, the Court finds no merit to Plaintiff's second request to stay Medical Defendants' Motion to Dismiss until he received proper discovery responses.  We also note that since we recommend that Plaintiff's Motion to Compel be denied, his Motion to Stay, which is also contained in his stated Doc. 126 filing, should be denied as moot.

23

the prison security staff would not allow him to have the hinged stabilizer brace for his knee. Insofar as Plaintiff states that he needs more information from Defendants to know "who maybe telling the truth" between the Defendants, we have found that the responses of Medical Defendants and Corrections Defendants to his discovery requests (Docs. 116 and 117) are proper.

Therefore, we will recommend that Plaintiff's Motion to Compel (Doc. 126) as against Corrections Defendants be denied.

B.   Medical Defendants' Motion to Dismiss Amended Complaint (Doc. 120)

In their Motion to Dismiss, Medical Defendants raise two arguments: first, Defendants claim that Plaintiff has not exhausted his DOC Administrative remedies with respect to his Eighth Amendment claims against them; and second, Defendants claim that Plaintiff has not stated any Eighth Amendment constitutional claim against them.  Medical Defendants initially indicate that their attached Exhibit B to their Brief shows that Plaintiff did not exhaust his administrative remedies with respect to his Eighth Amendment claims against them. (Doc. 120, p. 1).  Medical Defendants further contend that Plaintiff's Eighth Amendment claims against them are insufficient since he did not allege that they knew their conduct presented a substantial risk of harm to him and that they acted in deliberate indifference to his serious medical needs.  (*Id.*, pp. 1-2 ).[19]

_____

[19]As an exhibit to their Brief in support of their Motion to Dismiss, Medical Defendants attached a copy of Plaintiff's Amended Complaint (Doc. 112).  Doc. 121, Ex. A.   Medical Defendants also have attached a copy of Plaintiff's complete Grievance file (13 total Grievances) from SCI-Frackville as Exhibit B to their Brief.  Doc. 121, Ex. B.  Since Plaintiff has referenced his Grievances and his attempts to exhaust his DOC Administrative remedies in his Amended Complaint (Doc. 112, p. 5), and since Defendants have the burden to prove failure of Plaintiff to exhaust his claims and can do so *via* a Motion to Dismiss, we will consider Defendants' Ex. B.  *See Ray v. Kertes*, 285 F.3d 287 (3d Cir.  2002).

Thus, while Medical Defendants request  that the Court construe their Motion to

Case 3:06-cv-01655-JMM   Document 139   Filed 04/29/08   Page 25 of 47

In his amended pleading, as in his original pleading, Plaintiff has alleged that Medical Defendants personally violated his constitutional rights for failing to provide him with the knee brace he claims was proper, and for failing to give him the hinged stabilizer knee brace for his left knee dislocating problem.   Plaintiff thus alleged that Medical Defendants denied him proper medical care.  Upon initial screening of Plaintiff's original Complaint under the PLRA, we found that Plaintiff's allegations sufficiently stated the personal liability of the three Medical Defendants to proceed with service of the original Complaint upon Medical Defendants.

In his Amended Complaint (Doc. 112), Plaintiff basically claims that Medical Defendants knew about his chronic dislocating knee condition, and that they failed to provide proper medical care, *i.e.* a hinged knee stabilizer, even though a doctor ordered this type of knee brace for him, due to his "unstable knee," on August 5, 2005.  Plaintiff claims that on August 10, 2005, Medical Defendants gave him a different type of knee brace than was ordered by the doctor and that he refused to accept the wrong knee brace.  (Doc. 112, p. 4).  Plaintiff avers that he was given the wrong type knee brace because Defendant Security Captain Kneal would not allow him to have the hinged knee stabilizer for security reasons due to its metal inserts or hinges.  Plaintiff states that

---

Dismiss as one for Summary Judgment to the extent that their Exhibit B is considered with respect to the exhaustion issue, we do not find that this conversion is required.  (Doc. 121, p. 9, n. 2 and p. 10, n. 3).  We also note, as stated above, that Plaintiff attached copies of some of his Grievances and responses thereto to his original Complaint.  (Doc. 1).

Further, even if the Motion of Medical Defendants requires for its support matters outside of the pleadings, *i.e.* Doc. 121, Ex. B, Plaintiff's grievance file, we agree with Defendants that their Motion should be converted to one for summary judgment under Rule 12(d) since all parties have been given amply opportunity to submit any materials they may have with respect to the exhaustion issue.  In fact, Plaintiff has submitted as exhibits to his opposition Brief copies of the Grievances he filed at SCI-Frackville, Doc. 135, Exs. A-F.

Medical Defendants claimed that the security department at the prison prevented the "medically ordered brace" required for his serious medical need which resulted in his pain and suffering "for a life threatening illness of a knee." (Doc. 112, p. 2).   Plaintiff also avers that Medical Defendants denied and delayed for over 15 months his MRI recommended by a specialist for his "life threatening tourn (sic) cartilage."  (*Id*.).

Plaintiff was again offered another knee brace in January 2006, and he refused to use it. Plaintiff's Ex. A-6 attached to his original Complaint (Doc. 1), namely, his January 15, 2006 Inmate Request to Staff, indicated that in January 2006 he was given a knee cap stabilizer, on two occasions, and not a knee stabilizer.  Plaintiff stated in his Request form that the doctor told him that the Security Department at the prison would not let him get the knee stabilizer ordered. Plaintiff also stated in his Request form that the knee brace he required was also made with plastic supports (as opposed to metal supports, which was why the Security Department would not allow Plaintiff to possess the hinged knee brace).

Plaintiff's allegations in both his Amended and original Complaints and his exhibits attached to his initial pleading seemed to suggest that Medical Defendants did try to get Plaintiff the prescribed hinged knee stabilizer brace, but they were advised that it was not allowed by the prison Security Department due to security concerns over the metal hinges or inserts.

As this Court stated in *Anderson v. BOP*, 2005 WL 2314306 (M.D. Pa. 2005), *7:

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)(*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) to evidence deliberate indifference to a serious

medical need.  *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003).  The inmate must satisfy this two-part, conjunctive test.  Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference.  *See Farmer v. Brennan,*511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed.  *Estelle v. Gamble,* 429 U.S. 97, 104--105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).  However, if a prisoner is under the care of a medical expert, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety.  *Farmer, supra,* 511 U.S. at 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Estelle v. Gamble,*429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. at 293.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  *See White v. Napoleon,*897 F.2d 103, 110 (3d Cir.1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause  of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).

As stated, upon initial screening of Plaintiff's original Complaint, we found that Plaintiff stated Eighth Amendment claims with respect to the denial of a hinged stabilizer knee brace against all five remaining Defendants, namely, Kneal, Malewski, Sterling, Slivka and Ellesworth.

### 1. Exhaustion of Administrative Remedies

As their first argument (Doc. 120, p. 1), Medical Defendants contend that Plaintiff has failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against them.[20]

As mentioned, Medical Defendants argue that the Plaintiff failed to exhaust his available DOC administrative remedies with respect to his Eighth Amendment claims he asserts against them in his Amended Complaint.   Medical Defendants have properly raised the Plaintiff's failure to exhaust by the filing of their present Motion to Dismiss.  As Medical Defendants recognize (Doc. 121, pp. 9-11), they must plead and prove the exhaustion issue as an affirmative defense and that they can raise such an issue in a Motion to Dismiss in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Medical Defendants have raised this defense as to Plaintiff's Eighth Amendment claims asserted against them in his Amended Complaint.  Medical Defendants contend that Plaintiff's grievance file from SCI-Frackville, Ex. B, Doc. 121, shows that Plaintiff did not identify Ellesworth in any of his grievances and that he only identified Sterling and Slivka in one grievance, but he failed to exhaust his grievance against them since he did not appeal this grievance to the

---

[20]We must first discuss Medical Defendants' exhaustion argument, since it is a threshold issue and  may render as moot any discussion as to whether Plaintiff has stated Eighth Amendment claims against them.

We note that while Medical Defendants have listed the exhaustion issue as thier first argument in their Motion to Dismiss, their support Brief discusses this issue as their second argument.  (Doc. 120, p. 1 and Doc. 121, p. 9).  In any event, as stated, we will discuss the exhaustion issue first.

final level of the DOC's Administrative remedies process.  (Doc. 121, p. 9).

In his Amended Complaint, Plaintiff avers as follows with respect to his attempts to exhaust his current Eighth Amendment claims:

> Plaintiff Ronald Joseph Plaster used and attempted to use the prison grievance procedure available that also came unavailable at S.C.I. Frackville to try and solve the problems of herein stated claims and facts in complaint on March 12, 2005 No. 146235, 7-15-06 No. 1577900, 5-25-06 No. 153381, No. 138071 12-9-05, 5-1-06 No. 150865, 2-20-07 No. 179370.  Plaintiff Ronald Joseph Plaster presented the facts relating that he could possible due to retaliation to his complaint. On dates grievance No. 146235 on 3-13-06 was denied, No. 157900 7-15-06 was denied, No. 153381 on 5-25-06 was denied, 138071, resolved and violated not providing remedies as resolved for and appealed and denied on 5-9-06, No. 150865 was denied on 5-1-06, No. 179370 was denied on 2-23-07.  On dates Plaintiff filed final appeal on grievance No. 146235 5-31-06 dismissed as untimely due to Dept.  of Correction interference with the grievance process, No. 157900 was denied on 10-30-06, No. 153381 was denied on August 3, 2006 as dismissed as untimely due to Dept.  of Correction interference with grievance procedure, No. 150865 was denied as untimely which Dept.  of Corrections interfered with grievance procedure on Aug.  3, 2006, No.  17390 was never answered after the 30 days period they have to respond with accordance with grievance policies DC-ADM 804 process deem exhausted, and grievance(s) denied and refused process on July 26, 2006, 4-7-06, 6-11-06, 6-12-06, 7-12-06, 5-8-06.

(Doc. 112, p. 5, ¶ 38.).[21]

---

[21]We note that in his original pleading (Doc. 1, ¶ 59.), Plaintiff detailed stated his grievances he filed regarding his Eighth Amendment claims.   Plaintiff's exhibits attached to his original Complaint showed that he did not exhaust his DOC Administrative remedies regarding his claims against the Medical Defendants before he filed this action.

¶ 59. of Plaintiff's original Complaint is similar to ¶ 38. of his Amended Complaint, Doc. 112.

As the *Ray* Court noted, 285 F. 3d at 295, n. 8, failure to exhaust may be raised as the basis for a Motion to Dismiss in appropriate cases, and as noted, we find that this defense is properly asserted in the Medical Defendants' present Motion to Dismiss.

Medical Defendants state in their Brief as follows:

> His [Plaintiff's] failure to identify Dr. Sterling, Ellsworth and Slivka in his grievances violates the regulations of the Department of Corrections. Those regulations state in relevant part:
>
>> The inmate shall include a statement of the facts relevant to the claim . . . the inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM804, Part VI.A1d. See [Doc. 121] Exhibit "C."

(Doc. 121, p. 10).

Medical Defendants argue, and their exhibits show,[22] that at the time this case was instituted, Plaintiff did not exhaust his administrative remedies with respect to his Eighth Amendment claims against them relating to their alleged failure to give him a hinged knee stabilizer brace. As we found in our July 24, 2007 R&R, the grievances attached to the original Complaint (Doc. 1) as B1 and B2, and now attached to Medical Defendants' Motion to Dismiss (Doc. 121) as Exhibit B, show Plaintiff's failure to exhaust his DOC administrative remedies regarding his Eighth Amendment claims against Medical Defendants. All thirteen (13) of the Grievances Plaintiff filed while he was confined at SCI-Frackville are specified in a chart on pages 1-2 of Defendants' Ex. B,

---

[22]We note that Plaintiff's own exhibits attached to his original Complaint, Doc. 1., also showed that Plaintiff did not exhaust his administrative remedies with respect to his Eighth Amendment claims against Medical Defendants.

Doc. 121.   A review of this chart shows that Plaintiff did not fully exhaust any of his relevant Grievances he filed against Medical Defendants about his health care.   Plaintiff also includes as his Exhibit F, Doc. 135, a copy of his Grievance tracking record from SCI-Frackville that is identical to Defendants' Ex.  B chart.

We agree with Medical Defendants that Plaintiff Plaster did not raise in his Grievance No. 138071 and  Grievance No. 146235 any complaint about Dr. Sterling, Ellesworth and Slivka.   (Doc. 135, Exs. A and B and Doc. 121, Ex. B).

Exhibit A attached to Plaintiff 's Appendix of Exhibits, Doc. 135, which is the same exhibit as Ex. B-1 to Plaintiff's original Complaint (Doc. 1), is a copy of Plaintiff's Grievance No. 138071 dated December 9, 2005.   Plaintiff states in this grievance as follows:

> I have a very bad knee that has had two major "sugerys" (sic) on it.  No MRI's have been taken, they refused to give me a proper knee brace for the right "perpuse" (sic) tell yesterday for the second time.  They gave me a leg "stableliser" (sic) so the knee "can not" (sic) move but they took it back due to metal in it.  They gave out Ace bandages for the "suport" (sic) and took them away.  "Whent" (sic) "out side" (sic) knee gave out walking on track had to be removed from the yard in a chair.  I "tolk" (sic) the doctor that I could move ok with pain in my knee "befor" (sic) the last "engery" (sic).  No stability test was done, no MRI, I got a cane and a Ace.  The Ace was taken away and this happen "with out" (sic) a check up ... .

(Doc. 135, Ex. A  and Doc. 121, Ex. B).  At Section B. on Grievance No. 138071, Plaintiff indicated "Resolved 12/15/05" and signed his name.  (*Id*.).

We agree with Medical Defendants that Plaintiff's Grievance No. 138071 did not mention them or complain about any of their conduct alleged to have violated the Eighth Amendment in this case.

Plaintiff also filed Grievance No. 146235 on March 12, 2006. (Doc. 135, Ex. B and Doc. 121, Ex. B).  In this Grievance, Plaintiff stated as follows:

> I have a problem with the security Dept. I have a problem with a knee
> going out and it is very painful.  The security dept. has had two chances
> to fix the problem, but they have not.  I need a knee stabilizer which
> they make in "medial" (sic) [metal] and plastic.  I do not have a knee stabilizer
> because security Dept.  will not let it in even though "othere" (sic)
> inmate(s) have the brace that medical is trying to get me in.  This
> has been going on "sence"(sic) 8-10-05 to the present date over
> 8 months.  I have been living in lots of pain and my knee has gone
> out <u>six times</u> in <u>eight months</u>.  This is a on going problem that was labeled
> chronic from 7-29-05.  I talked to Ms. Malewski and she informed me on
> Friday 3-10-06 security is at fault for my problems, as well as "loged" (sic)
> in my medical records.  The medical dept. is sending me out to a
> "spiculest" (sic) for "finile" (sic) "reckamendation" (sic) over my knee
> and "surgey" (sic) is expected due to problems and MRI's taken
> a month and a half ago.  This is a "vilation" (sic) of "Dsc" (sic) Policy and law.
> The 8th Amendment "Prohibits (Pain and suffering)" (sic).  I wish for
> "comensation" (sic) as and "Danuges" (sic) because of the actions
> of the security dept. with a written agreement and proper brace.

(Doc. 135, Ex. B and Doc. 121, Ex. B).  Clearly, in his Grievance No. 146235, Plaintiff was complaining about conduct of the prison Security Department, and not the Medical Defendants.

In his Amended Complaint on page 5, ¶ 38., Section V "Exhaustion of Legal Remedies," Plaintiff avers that he tried to resolve his present Eighth Amendment claims by filing his March 12, 2006 Grievance, No. 146235.  (Doc. 112, p. 5).  Plaintiff also mentions his above stated first grievance, *i.e.* Grievance No. 138071 dated December 9, 2005.  We again agree with Medical Defendants that neither of Plaintiff's two stated Grievances raised any claims against them that they were not providing Plaintiff with proper medical care.  In fact, Plaintiff conceded in his March 12, 2006 Grievance, No. 146235, that the Medical Department was trying to get him the knee stabilizer brace he claims he needed.  Plaintiff stated that the security department would not let him

have the metal brace, and he did not claim that the Medical Defendants refused to let him have such a brace in deliberate indifference to his serious medical needs.[23]

In his Brief, Doc. 134, pp. 6-8, Plaintiff contends that he exhausted all of his DOC Administrative remedies regarding his grievances that he was denied a proper knee brace and an MRI.  Plaintiff's present exhibits attached to his Appendix (Doc. 135, Ex. B) show that he did not properly exhaust his March 12, 2006 Grievance No. 146235.  Plaintiff's final appeal of his Grievance No. 146235 was dismissed an untimely.  (Doc. 135, Ex. B).  Further, as stated, Plaintiff's Grievance  No. 146235 did not  raise any claim of denial of proper medical care against the Medical Defendants that he raises against them in his Amended Complaint.  Thus, Plaintiff's own exhibits show that he did not properly exhaust  his March 12, 2006 Grievance and that he did not raise his Eighth Amendment claims against the Medical Defendants in it.  (Doc. 135, Ex. B).  As discussed, Plaintiff's Grievance dated March 12, 2006 did not mention any Eighth Amendment claims against Medical Defendants which Plaintiff raises in his Amended Complaint.  We agree with Medical Defendants that they have  offered  evidence to show that Plaintiff did not exhaust his administrative remedies with  respect  to  his  claims  against  them,  and  we  find  that  Medical Defendants have shown through Plaintiff's and their exhibits (Docs. 121 and 135) that he did not exhaust his Eighth Amendment claims against them.  Further, we agree with Medical Defendants (Doc. 121, p. 9) that Defendant Ellesworth is not mentioned in any of Plaintiff's Grievances.  (Doc.

---

[23]As we stated in our July 24, 2007 R&R, Plaintiff's Exhibit A attached to his March 14, 2007 Brief (Doc. 50), *i.e.*, his February 19, 2007 Inmate Request to Staff, revealed that according to  his medical records, the prison security department denied him the proper knee brace on August 10, 2005, and not the Medical Defendants.

135, Exs. A-D).

Medical Defendants also state that while Plaintiff did mention Defendants Sterling and Slivka in his Grievance No. 157900, dated July 15, 2006, Doc. 135, Ex. C, Plaintiff failed to appeal this Grievance to final review.  (Doc. 121, p. 9).[24]  However, we find that Plaintiff's exhibits show that he did exhaust his Grievance No. 157900 to final review.  (Doc. 135, Ex. C, last page).

Plaintiff's Grievance No. 157900 was dated July 15, 2006.  (Doc. 135, Ex. C).  In this Grievance, Plaintiff stated as follows:

> Mr. Solomon Doctor Acting Physician Assistant found that I have a dislocating knee and ordered me a new brace for a dislocating knee.  Mr. Solomon ordered wrong brace by accident according to Ron Slivka N.P. Physician Assistant CRNP.  This is recoreded (sic) in medical file.  Doctor Sterling according to Ron Slivka NP, CRNP, discontinued the brace because I already had a different type of brace of what I have.  It has been deemed that I need a different brace for a lose (sic) knee a few weeks ago and I have been diagnosed for it.  I need a knee stabilizer for a lose (sic) knee.

(*Id.*).

We do not find that Plaintiff's Grievance No. 157900 raised his numerous Eighth Amendment claims which he now asserts against Medical Defendants in his Amended Complaint, Doc. 112, pp. 6-8.  We find Plaintiff's very own exhibits (Doc. 135, Exs. A-D) show that he did not exhaust his Administrative remedies with the DOC with respect to his specific Eighth Amendment claims against the Medical Defendants before he filed this civil rights action in federal court.  Also, even though we find that Plaintiff exhausted his Grievance No. 157900, this Grievance did not

---

[24]Since Medical Defendants have submitted a copy of the DOC Policy No. DC-ADM 804 regarding the DOC's Administrative remedy process, we shall not repeat it herein.  (Doc. 121, Ex. C).

claim any improper medical care by the three Medical Defendants, as he alleges in his Amended Complaint.  Therefore, we agree with Medical Defendants in their Brief (Doc. 121, pp. 9-11), that Plaintiff did not exhaust his Administrative remedies with respect to his Eighth Amendment claims asserted against them in his Amended Complaint.

The exhaustion requirement is a mandatory prerequisite to filing suit and must be sufficiently alleged.  *See Booth v. Churner*, 206 F. 3d 289 (3d Cir. 2000) *aff'd* 532 U.S. 731, 121 S. Ct. 1819 (2001); *Nyhuis v. Reno*, 204 F. 3d 65 ( 3d Cir. 2000).  Even if a Plaintiff is seeking declaratory, injunctive and monetary relief, as in this case (Doc. 112, pp. 8-9), he still must exhaust his administrative remedies, as the PLRA makes no distinction between claims for damages, injunctive relief, or both.  *Id.*  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*

The Third Circuit Court of Appeals, as stated above, has held in the case of *Ray*, 285 F.3d at 295-296, that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action.  Medical Defendants, as discussed, have properly asserted this defense in the present case.

Recently, the Supreme Court reiterated that exhaustion was required in § 1983 cases.  In *Woodford v. Ngo*, _ U.S._, 126 S. Ct. 2378, 2382-2383 (2006), the Court stated:

> The PLRA strengthened the exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought  - - monetary damages  - - cannot be granted by the administrative process. *Id.* at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra*, at 524, 122 S.Ct. 983.

We recognize that in *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910 (2007), the Supreme Court held that the failure to name defendants under the Michigan State grievance procedure (MDOC) did not amount to a failure to exhaust. However, the Michigan State grievance procedure did not require that t he inmate had to name the specific prison staff in his grievance. *See Buehl v. Beard*, 2007 WL 1830616, * 7, n. 8 (W.D. Pa.) The Court in *Buehl* stated that, while the MDOC policy did not require an inmate to identify specific prison staff involved with his grievance, the Pennsylvania DOC grievance policy does have such a requirement.

The *Buehl* Court stated:

> The Court in *Spruill* has already held that the Pennsylvania DOC's grievance policy does contain such a requirement to name responsible individuals and that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill,* 372 F.3d at 234.

*Id.*

The *Buehl* Court further stated:

> This court understands *Bock* to state that whereas Congress' intent in the PLRA's statutory exhaustion requirement was not thought to have

as one of its leading purposes early notice, such a purpose may have been a subordinate purpose.  Even if not a subordinate purpose of the Congress, early notice can be a purpose of the state policy (which provides the yardstick by which to measure exhaustion) and as *Spruill* seemed to at least imply, was such a purpose of the DOC policy.  Even if not a purpose of the DOC policy, it is clear, regardless of the purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default.  *See, e.g., Williams v. Pennsylvania, Dep't of Corrections*, 146 Fed.Appx. 554, 557 (3d Cir. 2005) ("his failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA.").

*Id.*

The *Buehl* Court concluded:

Moreover, under *Spruill*, it is a Plaintiff's burden to explain why he did not name a defendant in the grievance.  *See Spruill*, 372 F.3d at 234 (Spruill did not [name Brown in his grievance] and has offered no explanation for his failure to do so.").  Plaintiff has offered no affidavit as to why he did not name the Defendants herein in his grievances.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("This statement, being unsworn, does not meet the requirements of Fed.Rule Civ.Proc. 56(e)"); *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 812 (Fed.Cir. 1999) ("Unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence."); *Thornton v. U.S.*, 493 F.2d 164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument does not constitute evidence."); *Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997) ("Moreover, their unsworn letters do not satisfy the requirements of Fed.R.Civ.P. 56(e) and therefore cannot defeat VV's motion for summary judgement.") In light of the foregoing, and in the face of Defendants' explicit argument that Plaintiff procedurally defaulted his claims against all defendants not specifically named in the grievance, the Plaintiff has not carried his burden under *Spruill* with respect to explaining why he failed to name the DOC Defendants in the grievances.

37

*Id.* at * 8.

In the present case, as in *Buehl*, Medical Defendants have argued that Plaintiff has procedurally defaulted his Eighth Amendment claims against them since Defendant Ellesworth was not specifically mentioned in any of his grievances and since Plaintiff's Grievance No. 157900, while it mentioned Sterling and Slivka, it did not raise his present Eighth Amendment claims against them. Nor has Plaintiff Plaster met his burden under *Spruill* and stated why he did not specifically mention Ellesworth and any of his Eighth Amendment claims against Sterling and Slivka in his grievances. In fact, as stated, Plaintiff's grievances complain more about the Security Department's decision not to allow his ordered knee stabilizer brace.

In *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir.)(Non-Precedential), the Court indicated that dismissal is mandatory if exhaustion was not completed when the inmate filed his action in federal court.

Plaintiff's action is clearly challenging prison conditions and thus, exhaustion is required in his case. It is undisputed that the Pennsylvania DOC has a grievance system available to inmates to complain about prison conditions. (Doc. 121, Ex. C). It is undisputed by Plaintiff's own exhibits (Doc. 135) that before filing the instant action, Plaintiff did not exhaust his available Administrative remedies with respect to his specific Eighth Amendment claims against Medical Defendants, and that he did not mention Medical Defendants in his grievances. The PLRA clearly provides that a § 1983 action with respect to prison conditions cannot be brought until the available Administrative remedies at the prison are exhausted. *See Ngo*, 126 S. Ct. at 2384. Plaintiff has thwarted the purpose of the exhaustion requirement by not allowing the prison to have a fair and full opportunity

to address his present Eighth Amendment claims against Medical Defendants before he filed this action. *Id*. at 2385.  In fact, Plaintiff's March 12, 2006 Grievance No. 146235 (Doc. 135, Ex. B) complained about the security department's decision not to let him have the knee stabilizer, and it did not even mention Medical Defendants' conduct alleged in his Amended Complaint.   Nor did Plaintiff's Grievance No. 157900 mention Medical Defendants' conduct alleged in his Amended Complaint.   The Court in *Ngo* concluded that "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 2387.  Plaintiff's attempts to exhaust his Eighth Amendment claims in this case as to Medical Defendants did not  provide "prisons with a fair opportunity to correct their own errors." *Id*. at 2387-2388.  Thus, based on *Ngo*, we find that Plaintiff did not properly exhaust his administrative remedies with the DOC as to his Eighth Amendment claims against Medical Defendants, since he did not mention Ellesworth at all in his grievances and he did not raise his present Eighth Amendment claims against Sterling and Slivka in Grievance No. 157900 regarding their alleged role in the denial of providing him with the proper care for his knee condition.

Plaintiff's improper exhaustion as to Medical Defendants (and lack of any exhaustion as to Defendant Ellesworth) in this case was contrary to the PLRA's mandatory exhaustion requirement. As the *Ngo* Court stated, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388.  In the present case, Plaintiff's exhibit regarding his Grievance No. 146235 (Doc. 135, Ex. B) indicates that he complained about the security department's decision not to let him have the stabilizer brace he claims was required to prevent his knee from dislocating.  The utilization of the prison grievance system by Plaintiff in this case, without mentioning any of his Eighth Amendment claims against

Medical Defendants and without specifically mentioning Defendant Ellesworth, did not afford the prison with a full and fair opportunity to consider his grievances against the stated Defendants before this case was commenced. As in *Ngo*, we find that Plaintiff's use of the DOC's grievance system with respect to Medical Defendants rendered the PLRA's exhaustion as "a toothless scheme." *Id*.

As the Court stated in *Ullrich v. Idaho*, 2006 WL 288384 , * 2 (D. Idaho), "[a] prisoner is required to exhaust all of his Administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions fo his confinement." "Exhaustion must occur prior to filing suit, and a prisoner may not attempt exhaustion of his Administrative remedies during the course of a civil rights action." (Citation omitted).

The Court in *Parker v. Perry*, 2006 WL 2635097, * 1 (E.D. Tex.), stated as follows:

> In 1996, Congress enacted the Prison Litigation Reform Act (hereinafter "P.L.R.A."), which made several changes to 42 U.S.C. § 1997e. Congress tightened up the exhaustion requirements. Without exception, inmates are now required to exhaust all administrative remedies available in the prison system prior to filing a lawsuit. The Supreme Court examined the new rules and unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). It is noted that the grievance procedures take approximately ninety days to complete. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). It is further noted that the Court has the option to dismiss civil rights lawsuits with prejudice where an inmate filed a lawsuit before exhausting his administrative remedies. *See Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

40

*See also Tron v. U.S.*, 2006 WL 2599348 (D. Or.).  Exhaustion is a pre-condition to a § 1983 civil rights action and is mandatory.  *See Ngo*, 126 S. Ct. at 2382; *Banks, supra*.

Further, as this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.), "[t]he PLRA mandates that inmates 'properly' exhaust Administrative remedies before fling suit in federal court." (Citing *Ngo* at 2387).  This Court also stated that the PLRA exhaustion requirement was designed, in part, to "afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit." *Id.*, *9.  As this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a); *see Woodford v Ngo*, 126 S.Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002).  "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted).  "The benefits of exhaustion can be realized only if the prison grievance system si given a fair opportunity to consider the grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  *Id.* at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.  Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v.*

41

*Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

> The PLRA's exhaustion requirement was designed to reduce the quantity
> and improve the quality of prisoner lawsuits, as well as afford
> corrections officials an opportunity to address complaints internally
> before allowing the initiation of a federal suit.  *Woodford*, 126 S.Ct.
> at 2387-88 ("The benefits of exhaustion can be realized only if the
> prison grievance system is given a fair opportunity to consider the
> grievance.").  The PLRA exhaustion requirement is satisfied if the
> Plaintiff files a grievance and appeals the denial of the grievance to
> the highest level possible, giving the prison "fair notice" of the
> claim and an opportunity to remedy it.  To provide fair notice of a
> claim, the plaintiff must allege specific acts of mistreatment or
> misconduct and identify the responsible party or parties.  *See Pack v.
> Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d
> 503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir.
> 2003).  Although neither the Third Circuit Court of Appeals nor the
> Supreme Court has defined how specific an inmate's administrative
> grievance must be to place the prison on "fair notice" of a claim
> prior to pursuing it in federal court, the Supreme Court has held that
> the prisoner's compliance with the agency's applicable administrative
> remedy process should be the yardstick for making such an assessment.
> *Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

As in the *Fortune* case, it is clear that Plaintiff Plaster's March 12, 2006 grievance was not sufficient to put the DOC officials on notice and to give them an opportunity to address Plaintiff's present Eighth Amendment claims against Medical Defendants.  Further, as in *Buehl*, Plaintiff Plaster procedurally defaulted his Eighth Amendment claims against Medical Defendants since they were not specifically named in the March 12, 2006 grievance, Grievance No. 146235 (Doc. 135, Ex. B), and since Plaintiff did not raise his present Eighth Amendment claims (Doc. 112, pp. 6-8) against Sterling and Slivka in his Grievance No. 157900 and the time to file a grievance against them has

long passed.

We find that this case should be dismissed as to Medical Defendants for failure of Plaintiff to exhaust his Administrative remedies against them before he filed this action based on *Ngo* and *Fortune*. *See also Farrell v. Beard*, 2006 WL 2828862 (M. D. Pa.); *Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa.) (This Court dismissed Plaintiff's claims without prejudice his he failed to exhaust his Administrative remedies prior to filing his action in federal court despite having exhausted them while his action was pending).[25]

---

[25]As this Court in *Lasko* noted, since the exhaustion issue in our case is a threshold issue, there is no need to consider the second  argument in Medical Defendants' Motion to Dismiss (Doc. 120, pp. 1-2), *i.e.* Plaintiff's failure to allege that they knew their conduct presented a substantial risk of harm to Plaintiff. *See Lasko v. Hendershot*, 2006 WL 2828787 at * 5, n. 3.

If the District Court does not find that Plaintiff failed to exhaust his present Eighth Amendment claims against Medical Defendants, we find, based, in part, on our September 20, 2006 R&R (Doc. 14), that Plaintiff has stated Eighth Amendment claims against these Defendants.  We also find that upon review of Plaintiff's Amended Complaint, Doc. 112, as detailed above, Plaintiff has stated Eighth Amendment claims against Medical Defendants since he has alleged that they were deliberately indifferent to his serious medical needs for his knee condition.  Thus, we find no merit to Medical Defendants' second argument in their Motion to Dismiss Plaintiff's Amended Complaint.

Thus, we shall recommend that Medical Defendants' Motion to Dismiss Plaintiff's Amended Complaint as against them be granted.  (Doc. 120).[26]

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Motion to Dismiss the Amended Complaint of Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth **(Doc. 120)**, be granted and that these three Defendants be dismissed entirely from this action for failure of Plaintiff to have exhausted his DOC Administrative remedies regarding his Eighth Amendment claims against them.  If the District Court does not adopt our recommendation that the Motion to Dismiss of Medical Defendants be granted with respect to the exhaustion issue, or if the District Court only adopts our recommendation as to failure to exhaust as Defendant Ellesworth, we recommend that this case proceed as against the remaining two Medical Defendants with respect to Plaintiff's Eighth Amendment claims.  Additionally, we recommend that Plaintiff's Motion to

---

[26]As stated, Plaintiff's March 12, 2006 Grievance No. 146235 (Doc. 135, Ex. B), indicated that the Security Department was at fault with respect to his Eighth Amendment claims of  faliure to  allow him to have the proper knee brace, and not Medical Defendants. Plaintiff orgianlly stated (and his exhibits attahced to his orgian compaint  showed) that Defendant Kneal was the security captain who allegedly prevented the prison medical staff from giving him the proper knee brace ordered by the doctor since it was alleged to be a security risk due to its metal hinges or inserts used to support the hinged knee brace.  Plaintiff indicated that he requested a knee brace with plastic inserts.  (Doc. 1, Exs. A-1 and A-6). Plaintiff's exhibits to his original Complaint showed that he was offered on at least two occasions a knee brace for his knee condition and that the medical staff found the offered braces to be proper for his condition, but Plaintiff refused both braces, claiming that they were knee cap braces instead of a knee stabilizer brace.  (*Id*., A-6).

Compel as against Corrections Defendants and Medical Defendants, and Plaintiff's second Motion to Stay **(Doc. 126)** be denied.  Finally, we recommended that this case be remanded to the undersigned for further proceedings only with respect to Corrections Defendants.[27]


                                   s/ Thomas M.  Blewitt
                                   **THOMAS M. BLEWITT**
                                   **United States Magistrate Judge**

**Dated: April 29, 2008**

---

[27]As stated, if the District Court rejects our recommendation to dismiss Medical Defendants based on the failure of Plaintiff to have exhausted his Administrative remedies, we recommended that this case also be remanded so that Medical Defendants can be directed to answer Plaintiff's Amended Complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, SECRETARY OF THE | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 29 , 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                          s/ Thomas M. Blewitt
        _____          THOMAS M. BLEWITT
                                          United States Magistrate Judge


**Dated: April 29, 2008**