IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, SECRETARY OF THE | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Ronald Plaster, formerly an inmate at the State Correctional Institution at Frackville ("SCI-Frackville")[1] originally filed, *pro se*, this civil rights action, pursuant to 42 U.S.C. § 1983, on August 23, 2006, naming as Defendants ten (10) individuals employed by the Pennsylvania Department of Corrections ("DOC"). Nine Defendants were employed at SCI-Frackville, and one Defendant was Secretary of the DOC. (Doc. 1). Plaintiff also filed two motions for leave to proceed *in forma pauperis*. (Docs. 2 and 9).

---

[1]Plaintiff filed a change of address notice indicating that on September 27, 2007, he was transferred from SCI-Frackville to SCI-Graterford. (Doc. 110). On February 26, 2009, Plaintiff filed another change of address notice indicating that he was no longer confined at SCI-Graterford and that his new address was 1221 Race St., Philadelphia, Pennsylvania. (Doc. 177). Plaintiff indicated that he was no longer confined at SCI-Graterford as of February 19, 2009. All of Plaintiff's present claims relate to his former confinement at SCI-Frackville.
Thus, it appears as though Plaintiff is no longer confined in any prison. In fact, during Plaintiff's November 6, 2008 deposition, Plaintiff testified that he was going to "max out [on his sentence] in three to four months." (Doc. 166, Ex. C, p. 2).

We screened Plaintiff's original Complaint pursuant to  the Prison Litigation Reform Act ("PLRA").   On September 20, 2006, we issued a Report and Recommendation ("R&R") in which we recommended that Defendants Beard, Shannon, Lamas, Jones and Reichner be dismissed entirely from this action under 28 U.S.C. §1915(e)(2)(B)(ii).  We also recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.  Further, we recommended that Plaintiff's claims for specific monetary damages in his pleadings be stricken. Furthermore, it was recommended that Plaintiff be permitted to proceed with respect to his Eighth Amendment claims against Defendants Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth.[2] It was also recommended that the matter be remanded to the undersigned for further proceedings.[3] (Doc. 14).

On December 27, 2007, the District Court issued a Memorandum and Order adopting our R&R.  (Doc. 23).  We then granted Plaintiff's *in forma pauperis* Motions and directed the Clerk of Court to serve Plaintiff's Complaint and discovery request on the five remaining Defendants, namely, Kneal, Malewski, Dr. Sterling, PA Slivka and PA Ellesworth.  (Doc. 26).  Summons was issued and counsel for Defendants Dr. Sterling, PA Slivka and PA Ellesworth ("Medical Defendants") entered an appearance.  (Doc. 28).  On January 30, 2007, Medical Defendants jointly filed a Motion to Dismiss the Complaint.  (Doc. 29).  On February 6, 2007, counsel for Defendants Kneal

---

[2]Defendants Kneal and Malewski were called the "Corrections Defendants," and Defendants Sterling, Slivka and Ellesworth were called the "Medical Defendants."

[3]We have been assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1).

and Malewski ("Corrections Defendants") entered an appearance.  (Doc. 31).[4]  On February 13, 2007, Medical Defendants filed their Brief in Support of their Motion to Dismiss with Exhibits. (Doc. 32).  On February 20, 2007, Corrections Defendants jointly filed a Motion to Dismiss and a Support Brief.  (Docs. 34 and 35).  After being granted an extension of time, Plaintiff filed a Brief in Opposition to the Motion to Dismiss of Medical Defendants along with his Declaration.  (Docs. 39 and 40, respectively).

On March 14, 2007, Plaintiff filed his Response Brief with Exhibits to Corrections Defendants' Motion to Dismiss.  (Doc. 50).

On July 24, 2007, we issued a Report and Recommendation ("R&R") and recommended that the Motion to Dismiss of Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth (Doc. 29), be granted and that these three Defendants be dismissed entirely from this action.  It was also recommended  that the Motion to Dismiss of Corrections Defendants (Kneal and Malewski) (Doc. 34) be denied, and that this case proceed as against these two Defendants with respect to Plaintiff's Eighth Amendment claims.   Additionally, we recommended that Plaintiff's Motion to Stay his opposition brief (Doc. 79) be denied.  Further, we recommended that this case be remanded to the undersigned for further proceedings, including directing Corrections Defendants to answer Plaintiff's Complaint.  (Doc. 95).

Plaintiff filed objections to our R&R, as well as a Motion for leave to file an Amended Complaint.  (Docs. 97 and 102).  On October 18, 2007, the District Court issued a Memorandum

---

[4]New counsel for Corrections Defendants entered an appearance on May 9, 2007, Doc. 67.

and Order granting Plaintiff's Motion for Leave to File an Amended Complaint and denying as moot the Motions to Dismiss of the Medical Defendants and the Correction Defendants.  (Doc. 111). Plaintiff's Amended Complaint was filed on October 18, 2007.  (Doc. 112).  Plaintiff's Amended Complaint named the five remaining Defendants in this case, *i.e.* Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth, and Corrections Defendants, Kneal and Malewski.  On October 22, 2007, we issued an Order and directed the Clerk of Court to serve Plaintiff's Amended Complaint on the Medical Defendants and Corrections Defendants.  (Doc. 113).

On December 19, 2007, Corrections Defendants jointly filed their Answer to Plaintiff's Amended Complaint with affirmative defenses.    (Doc. 118).  In response to the Amended Complaint, Medical Defendants filed a Motion to Dismiss on January 4, 2008. (Doc. 120).  Medical Defendants also filed their support Brief with exhibits on January 4, 2008.  (Doc. 121).  After being granted extensions of time, Plaintiff filed his Brief in opposition to the Medical Defendants' Motion to Dismiss and exhibits on March 10, 2008.  (Docs. 134 and 135).

On April 29, 2008, we issued a R&R regarding  Medical Defendants' Motion to Dismiss. We recommended that the Motion to Dismiss the Amended Complaint of Medical Defendants, Dr. Sterling, PA Slivka and PA Ellesworth (Doc. 120), be granted and that these three Defendants be dismissed entirely from this action for failure of Plaintiff to have exhausted his DOC administrative remedies regarding his Eighth Amendment claims against them.  We recommended  that if the District Court did not adopt our recommendation that the Motion to Dismiss of Medical Defendants be granted with respect to the exhaustion issue, or if the District Court only adopted our recommendation as to failure to exhaust as Defendant Ellesworth, then this case be allowed to

4

proceed as against the remaining two Medical Defendants with respect to Plaintiff's Eighth Amendment claims.  (Doc. 139).

On August 29, 2008, the District Court issued a Memorandum and Order in which it adopted, in part, our R&R.  The Court granted the Medical Defendants's Motion to Dismiss with respect to Defendant Ellesworth and denied it as to Defendants Sterling and Slivka.  (Doc. 151).

On September 12, 2008, the two remaining Medical Defendants[5], after being granted an extension of time, filed their Answer to Plaintiff's Amended Complaint with affirmative defenses. (Doc. 153).  After the close of discovery, which included the November 2008 deposition of Plaintiff, Medical Defendants filed a Motion for Summary Judgment on December 19, 2008. **(Doc. 165).** Medical Defendants also simultaneously filed their Statement of Material Facts ("SMF"), support Brief and Exhibits.  (Docs. 166 and 168).[6]

On January 16, 2009, Corrections Defendants (Kneal and Malewski) filed a Summary Judgment Motion.  (Doc. 170).  The Court granted the Motion for Extension of Time of Corrections Defendants to file their support Brief.  (Docs. 174 and 175).  Corrections Defendants filed their support Brief, SMF and Exhibits on April 3, 2009.  (Docs. 180, 181 and 182).  The Summary Judgment Motion of Corrections Defendants is not yet ripe.[7]  We will issue a separate R&R with respect to the Summary Judgment Motion of Corrections Defendants after it becomes ripe.

---

[5]We now refer to Defendants Sterling and Slivka as "Medical Defendants."

[6]The Doc. 167 SMF appears to be an identical copy of the Doc. 168 SMF.  We use the Doc. 168 SMF herein.

[7]The Corrections Defendants' Summary Judgment Motion will be come ripe on or about May 7, 2009.

On January 26, 2009, Plaintiff filed a Motion for Extension of Time to file his brief in opposition to the Summary Judgment Motion of Medical Defendants, and the Court granted said Motion on January 27, 2009. (Docs. 172 and 173).   In the January 27, 2009 Order, the Court stated as follows:

> 1.  Plaintiff's Motion for Extension of Time (Doc. 172) is GRANTED.
>
> 2.  Plaintiff shall be afforded additional time, until March 20, 2009, to file his brief in opposition to the Medical Defendants' Motion for Summary Judgment.
>
> 3.  <u>No further extensions shall be granted absent extraordinary circumstances.</u>

(Doc. 173) (Emphasis in original).

The Doc. 173 Order was served on Plaintiff at SCI-Graterford, since he was still incarcerated there until February 19, 2009. (*See* Doc. 177).[8]   To date, Plaintiff has failed to file his opposition brief to the Summary Judgment Motion of Medical Defendants, and the time in which he was required to do so has lapsed (*i.e.* March 20, 2009).   In fact, the Court, *sua sponte*, afforded the *pro se* Plaintiff an additional sixteen (16) or more days to file his opposition brief.   Nonetheless, Plaintiff still failed to file his brief or to file anything with the Court indicating that he intended on pursuing his case in light of his apparent release from confinement.   Plaintiff's last filing with the Court was his February 26, 2009 notice of change of address. (Doc. 177).

---

[8]On February 1, 2009, Plaintiff filed a letter request for a copy of the docket sheet in his case, as well as copies of his Docs. 145 and 149 filings.  (Doc. 176).  Plaintiff stated that he needed the Doc. 145 copy since it had all of his medical exhibits attached and that he needed the Exhibits "to defend myself on current motion [*i.e.* Summary Judgment Motion of Medical Defendants]." (*Id*.).  The Clerk of Court sent Plaintiff the requested documents.

## II. Allegations of Complaints.

As we stated in our April 29, 2008 R&R (Doc. 139):[9]

> In his original pleading, Plaintiff alleged that he had a chronic dislocating left knee and loose knee problem, and that a hinged stabilizer brace was ordered by a doctor to treat this condition.  Plaintiff claimed that all of the Defendants violated his Eighth Amendment right to proper medical care by not giving him the correct brace for his knee due to alleged security concerns over the proper brace.  Plaintiff admitted  that he was offered (on two occasions) another type knee brace, but claimed that he would not sign a waiver for it since it was not the proper brace which the doctor had ordered.

> Plaintiff averred that on July 29, 2005, he was seen by Defendant Physicians Assistant ("PA") Ellesworth for complaints about his left knee dislocating.  Plaintiff stated that Defendant Ellesworth examined and treated him by giving him an Ace wrap.  Plaintiff stated that it was determined that a subsequent examination was required to see if he needed a brace.  (Doc. 1, p. 5, ¶ 13.).

> Plaintiff alleged that on August 5, 2005, he was given an examination by the medical staff in order to determine if he needed a brace for his dislocating knee.  Plaintiff stated that, upon examination, it was found that he had a loose knee problem, and a hinged stabilizer knee brace was ordered.  Specifically, Plaintiff stated that "examination revealed that Plaintiff has had past two surgeys (sic), ligament repaire (sic), cartilage repare (sic), clicking noted, crepitus, knee derament (sic), grinding, hing (sic) stabilizer ordered."  (*Id.*, ¶ 14.).

> Plaintiff averred that on August 10, 2005, he was sent to the medical department to pick up his hinged stabilizer brace, but he was given the wrong brace due to concerns regarding the hinged stabilizer brace by the security department head, namely, Defendant Captain Kneal.  Plaintiff claimed that Defendant Kneal refused to obey the doctor's order, which was in a note in his medical records.  Plaintiff stated that he refused to sign a waiver to receive the improper brace, which was offered to him in place of the hinged stabilizer brace.  (*Id.*, ¶ 15.).

> Plaintiff alleged that Defendants Malewski, Prison Medical Director, Dr. Sterling, Prison Doctor, and former Defendant Ms. Lamas, Deputy

---

[9]We have omitted the footnotes herein from the quoted language of our April 29, 2008 R&R.

Superintendent of Medical Department at the Prison, PA Slivka, and PA Ellesworth never issued a proper knee brace to stop his dislocating knee. (*Id.*, p. 6, ¶ 16.). He stated "their reason security will not allow them too." We previously deemed Plaintiff as stating that he filed a grievance with respect to not being given the proper knee brace and that his grievance was resolved for the second time, but that he did not receive the proper brace. (*Id.*). Plaintiff alleged that the Defendants were responsible for his knee dislocating eleven (11) times in one year and that this happened with the issued brace on his knee, but not the proper brace. (*Id.*, ¶ 17.).

Plaintiff stated that Dr. Salomon, along with Defendants  Dr. Sterling and PA Slivka, found that he did in fact have a dislocating knee and recorded this finding in his medical file. (*Id.*, ¶ 18.).

Plaintiff averred that Defendants Slivka and Malewski denied him physical therapy for "nearly a month" but stated that it was ordered by the doctor after he filed a grievance. (*Id.*, ¶ 19.).

Plaintiff claimed that his dislocating knee has caused him severe pain and suffering as well as a mobility problem for a year, and he claimed that the refusal to treat his problem caused him  lasting damage and injury. (*Id.*, ¶ 20.).

We also stated in our April 29, 2008 R&R:

Plaintiff claimed  that Defendant PA Slivka and Defendant Malewski denied him medical treatment in the nature of physical therapy for his dislocating knee problem, which he stated was recorded in his medical files, for almost one month. (Doc. 1, ¶ 19.).  Plaintiff averred that Defendants Malewski, Dr. Sterling, PA Slivka and PA Ellesworth have not issued him the proper knee brace required to prevent his left knee from dislocating based on their reason that "security [department] will not allow them too (sic)." (*Id.*, ¶16.).

Plaintiff averred that the stated actions of the Defendants amounted to deliberate indifference to his serious medical needs, and claims that his dislocating knee has caused him "severe pain, suffering, and mobility problem for a year" as well as "causing [him] lasting damage and injury." (*Id.*, ¶ 20.).

Plaintiff claimed  that the medical staff had  not yet issued him the proper knee brace due to security reasons.  Plaintiff raised  Eighth Amendment claims against Defendants for their direct or indirect refusal to provide him with a hinged knee stabilizer brace, which is a metal brace according to Plaintiff, Doc. 11, p. 3, ¶ 6., and his attached brochure, Doc. 1, Ex. C.  Plaintiff

admitted that Defendants offered him another type knee brace and that he refused it, and he claimed that Defendants' refusal to provide him with the hinged brace was due to security reasons, *i.e.* apparently due to the metal hinges or inserts contained therein. Plaintiff claimed that the conduct of the Defendants in not giving him a hinged knee stabilizer brace and by not directing the medical staff to do so violated the Eighth Amendment. (Last footnote omitted).

We further stated in our April 29, 2008 R&R:

Plaintiff alleges in his Amended Complaint that Defendants denied and delayed his required medical care by preventing him from receiving a knee stabilizer ordered by medical staff which caused him to require treatment for an unstable knee and caused him severe pain and suffering which resulted in physical injury and future harm in the nature of crippling effects. (*Id.*, p. 2, ¶ 10.). In his Amended Complaint, Plaintiff also alleges:

Medical personnel(s) (sic) have claimed that the security department personnel has prevented medically ordered brace for a serious medical need causing pain and suffering for a life threatening illness of a knee.

Denial and delay of medical MRI recommended by MRI specialist 1-30-06 over 15 months ago for a serious medical need of the knee of life threatening torn (sic) cartilage recommended more MRI for determination.

Physical therapy denied and delayed over matters of the knee ordered by Doctor Sterling and Herb Ferry and SCI. Frackville is not set up for physical therapy.

(*Id.*, pp. 2-3, ¶'s 11.-13.).

Plaintiff alleges that the prison Medical staff have all diagnosed his unstable knee condition and have found that the required treatment is a knee stabilizer brace with hinges. However, Plaintiff avers that his needs for his serious knee condition are not being met by Defendants since he is not being given the stated type of knee brace which physicians have ordered for him. Plaintiff states that as a result, he has suffered knee sprains, his knee gives out, and he has been caused pain and suffering. (*Id.*, p. 4, ¶'s 29.-34.). Plaintiff avers that Defendants Sterling and Slivka withheld documents from his prison Medical file when he was referred to orthopedist Doctor Gorton and that this specialist did not know of Plaintiff's chronic history of his knee problems, including his knee spraining and going out. (*Id.*,p. 5). Plaintiff concludes:

> Plaintiff was diagnosed with a stability problem of the knee
> perminitly (sic) and required to have a knee hinged stabilizer
> tell [till] knee could be removed at the age 40 since the age 19
> with major surgies (sic) due to stability issues.

(*Id.*, p. 5, ¶ 37.).

## III.  Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.,*, 477 .S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F.Supp. 314, 320 (E.D. Pa. 1982), *aff'd. mem*. 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.

1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## IV. Discussion.

### A. *Plaintiff's Failure to Prosecute*

We shall recommend that this case be dismissed as against Medical Defendants due to Plaintiff's failure to prosecute it and due to his failure to comply with this Court's Orders directing him to file his opposition brief.  (Doc. 173).   Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to *prosecute* or comply with these rules or *order of court*, . . ." (emphasis added).   In the instant case, Plaintiff has failed to both prosecute his action and to comply with an Order of the Court by his failure to file his stated brief as directed.  Plaintiff should be  deemed as abandoning his action with respect to Medical Defendants.  *See McCray v. Dauphin Co. Prison*, 2007 WL 431886 (M.D. Pa); *Nelson v. Berbanier*, 2006 WL 2853968 (M.D. Pa.).

Since we find that Plaintiff Plaster's conduct clearly shows that he intended to abandon his case with respect to Medical Defendants, we are not required to perform an analysis of the factors

11

of *Poulis v. State Farm Fire & Cas. Co.*, 747 F.3d 863, 868 (3d Cir. 1984), before recommending that this case be dismissed as against Medical Defendants under Rule 41(b). *See Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994); *Guyer v. Beard*, 907 F. 2d 1424 (3d Cir. 1990)(the district court's requirement to perform an analysis under *Poulis* is obviated where Plaintiff's conduct is so egregious as to demonstrate an abandonment of his case).

As mentioned, our Plaintiff has taken no action with respect to his case since February 26, 2009, over six weeks ago. The behavior of Plaintiff constitutes a wilful failure to prosecute his case as against Medical Defendants, as opposed to a situation in which he has had problems in pursuing his case but made efforts to comply with this Court's January 27, 2009 Order. We find that Plaintiff's "behavior has been so egregious as to make self-evident the factual findings and analysis [of the *Poulis* factors]." *Williams v. Kort*, 223 Fed. Appx. 95, 103 (3d Cir. 2007).

In *Jackson v. Johnson*, 2006 WL 2136218, *1 (M.D. Pa.), the Court stated that "Fed. R. Civ. P. 41(b) allows for the dismissal of an action where the Plaintiff fails to prosecute or fails to comply with rules or orders of the court."

The *Jackson* Court also stated:

> the factors set forth in *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 868 (3d Cir.1984) [are analyzed] to determine whether dismissal of the action is appropriate in this case. The *Poulis* factors the Court should consider are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis,* 747 F.2d at 868.

12

> We agree with the Magistrate Judge's determination that the Plaintiff's dilatoriness outweighs any of the other considerations set forth in *Poulis,* and that Plaintiff's failure to comply with the Order of May 30, 2006 indicates that the Plaintiff has abandoned this lawsuit. Her inaction points to no other logical conclusion.

*Id*.

Thus, out of an abundance of caution, we also analyze the *Poulis* factors with respect to Plaintiff's case as against Medical Defendants.  We find that Plaintiff's stated conduct in delaying his § 1983 civil rights case as against Medical Defendants to be attributable to him personally. Plaintiff was required to have filed his opposition brief to Medical Defendants' Summary Judgment Motion by March 20, 2009.  We *sua sponte* afforded Plaintiff additional time within which to comply with the January 27, 2009 Order.  Plaintiff has filed nothing in response to the stated Order.

We find that Plaintiff has caused prejudice to Medical Defendants since they have been named in this federal lawsuit since August 2006, and Plaintiff's inaction is delaying the disposition of this case.

While Plaintiff does not yet have a significant history of dilatoriness in this case, his present conduct in failing to prosecute his case as against Medical Defendants is nonetheless evidence of dilatoriness, especially since this case has not proceeded due to his noncompliance with the January 27, 2009 Order.

Based on our discussion above, we find that the conduct of Plaintiff is wilful, especially since he has filed nothing with the Court in response to the January 27, 2009 Order, and he has not explained why he has failed to comply with the Order.

Plaintiff is well aware  that his failure to comply with the January 27, 2009 Order would result in a recommendation that he be deemed as not opposing Defendants' dispositive motion. As stated, this case cannot proceed without Plaintiff's compliance with the January 27, 2009 Order. Since Plaintiff has not paid the filing fee, and since Plaintiff has just recently been released from prison, we find that other sanctions would not be effective in this case.

As discussed below, we find no merit to Plaintiff's Eighth Amendment claims against Medical Defendants based on the undisputed evidence Defendants submitted.  Thus, we find that Medical Defendants have a meritorious defense to Plaintiff's Eighth Amendment claims.

Thus, we find that the *Poulis* factors weigh in favor of dismissing this case as against Medical Defendants and that Plaintiff's failure to comply with the January 27, 2009 Order demonstrates he has abandoned his case as against Medical Defendants.

Moreover, Plaintiff should be deemed as not opposing the Summary Judgment Motion of Medical Defendants, pursuant to Rule 7.6, M.D. Pa., based on Plaintiff's failure to file an opposition brief to Medical Defendants' Summary Judgment Motion.   *See Salkeld v. Tennis*, 2007 WL 2682994, * 1 (3d Cir. 2007)(Non-Precedential) (Third Circuit Court found no error with District Court's decision of deeming Plaintiff inmate's motion as withdrawn for failure to comply with M.D. Pa. Local Rule 7.5 requiring the timely filing of a supporting brief).[10]

---

[10]Plaintiff was previously provided with copies of the pertinent Local Rules of this Court. *See* Doc. 6.

*2.   Merits of Medical Defendants' Summary Judgment Motion*

Even if Plaintiff is not deemed as abandoning his action as against Medical Defendants, we find merit to Defendants' Summary Judgment Motion.

The Eighth Amendment standard with respect to a denial of proper medical care claim was set forth by the Court in *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 110-111 (3d Cir. 2007). The *Goodrich* Court stated:

> A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983 *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment claim has objective and subjective components. First, the prisoner must show that his medical need is, objectively, sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Second, he must establish that the prison official acted with subjective deliberate indifference, that is, that the official was aware of a substantial risk of serious harm to the prisoner but disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
>
> A medical need qualifies as "serious" for purposes of Eighth Amendment analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment." *Monmouth County Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (quotation and citation omitted). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quotation \*111 and citation omitted). A mental illness may constitute a serious medical need. *Inmates of the Allegheny County Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir.1979) ("Although most challenges to prison medical treatment have focused on the alleged deficiencies of medical treatment for physical ills, we perceive no reason why psychological or psychiatric care should not be held to the same standard.).
>
> An inmate can show deliberate indifference" where, for example, "prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering." *Lanzaro,* 834 F.2d at 346 (quotation and citation omitted). Alternatively, deliberate indifference" is

> shown where knowledge of the need for medical care [is accompanied by the] ...
> intentional refusal to provide that care" or where"prison authorities prevent an
> inmate from receiving recommended treatment for serious medical needs or
> deny access to [a] physician capable of evaluating the need for such treatment."
> *Id*. at 346-47 (quotations and citations omitted). It is clear, however, that
> allegations of negligence do not rise to the level of a constitutional violation. *Estelle,*
> 429 U.S. at 106, 97 S.Ct. 285. Finally, "whether or not a defendant's conduct
> amounts to deliberate indifference has been described as a classic issue for the
> fact finder." *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.,* 372 F.3d
> 572, 588 (3d Cir.2004) (quoting *Nicini v. Morra,* 212 F.3d 798, 816 (3d Cir.2000)
> (Rendell, J., dissenting)).

*See also Ascenzi v. Diaz*, 2007 WL 1031516, *4 (M.D. Pa.).

Medical Defendants assert one main argument in their Brief, namely, that the undisputed evidence shows that they were not deliberately indifferent to Plaintiff's serious knee condition and that Plaintiff failed to show that they caused him physical injury with respect to his Eighth Amendment denial of proper medical care claims. (Doc. 165).

Since Medical Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 168), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence (Doc. 166, att. Exhibits), we shall adopt as our own all of Defendants' facts contained in their SMF. Further, none of Defendants ' material facts are disputed by Plaintiff, either through an opposition Brief or through any evidence. Thus, Plaintiff has not responded to Defendants' SMF as required by Local Rule 56.1 of M.D. Pa., and he has not filed an opposition brief as required by Local Rule 7.6 of M.D. Pa.

Medical Defendants have undisputedly shown that they were not deliberately indifferent to Plaintiff's serious knee condition and that their treatment of Plaintiff did not cause him any physical injury with respect to his remaining Eighth Amendment claims against them. Since

Defendants' SMF are supported by evidence and since Plaintiff has not properly responded to them, as stated, we shall accept all of Defendants' SMF as undisputed.  We shall incorporate them herein by reference and shall not repeat them herein.  (Doc. 24-2, ¶'s 1.-16.).  *See U.S. ex rel. Paranich v. Sorngard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[11]

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id*. Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id*.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa.2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

Additionally, Plaintiff admitted at his deposition that Medical Defendants were not deliberately indifferent to his serious knee condition.  As Medical Defendants point out, Plaintiff

---

[11]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

testified as follows:

> A.      Actually, the first time I ever had my  - - upon my initial injury back in 2001 I had my knee go out on me one time and then when I hit the Department of Corrections I had little minor sprains but I never had anything that would put me on a couch for a couple of days.  I had Department of Corrections and my knee kept on going out and going out. Dr. Scott Sterling and Ron Slivka, your clients they tried their best to get me my hinge stabilizer but the Department of Corrections threw everything in the book they had at them.  They knew about it.  That much I can say.  I'm not actually here to find your defendants guilty upon that area.  I'm here because of the treatment that was supposed to be rendered behind it. They tried their best on that.  That's not their fault but then again, they should have took steps to try to secure it because Department of Corrections contending that they didn't know nothing about it and I know that is some BS. Dr. Ronald Slivka and Scott Sterling did notify them and I am only told this because they told me it.  Somebody has to budge in that areas.

> Q.      And you think Dr. Sterling and Mr. SLivka did all that they could  - -

> A.      They did all that they could if they anted to keep their job there, yeah.

(Doc. 166, Ex. C, pp. 45-46).

> Plaintiff also testified as follows:

> Q.      Now, you sued my clients Dr. Sterling, Slivka and I just want to take each of them.  Right now we'll take Mr. Slivka.  It looks like you had a great deal of contact with him while you were at Frateville?

> A.      Yes, he was very professional and he also felt the frustration I felt.  We even hollered at each other a couple of times.

> Q.      You thought he had your best interest?

> A.      He had my best interest but Department of Corrections liberally - - they had messed with his mental judgement as much as he had his hands tied behind his back.

Q.     Did you think at all that he was trying to do anything to hurt you?

A.     Not purposely, no.

Q.     What about with Dr. Sterling?

A.     He knew about it but he didn't ignore it but he just let some things slide through.

Q.     You think he had your best interest also at heart?

A.     Just as long as it didn't involve messing with the Department of Corrections, yeah.

Q.     What about the same question as I asked you about Slivka about trying to hurt you, do you think he was purposely trying to do something that would make you hurt or make you injured?

A.     No.  As much as he cared about my well-being but when it comes to messing with the Department of Corrections he had to go with them because if he didn't go with them like that  - -

Q.     Well, if he couldn't get you that type of brace he just couldn't get it for you because of security reasons?

A.     Yeah.

Q.     You understood that?

A.     Yes.  And that is what I'm understanding.  I mean if he  - - if security is actually at fault behind him yeah, I agree he shouldn't be in this suit but the only problem is they're contending this and they're contending that.  I don't know who the heck is telling the truth.  I just know it is going to have to be hashed out.

(Doc. 166, Ex. C, pp. 50-52).

Further, we agree with Defendants that Plaintiff's detailed prison medical records demonstrate that they were not deliberately indifferent to Plaintiff's serious knee condition.

19

(Doc. 166, Ex. L, pp. 1-84).  The undisputed evidence shows, as Defendants contend, that they tried to get Plaintiff the hinged stabilizer knee brace that he requested, but that the DOC did not approve of it for security reasons.  Medical Defendants then provided Plaintiff with another type brace which they believed provided him with the same support, and Plaintiff did not feel that the brace provided was as good as the one he desired.

Also, as Defendants state, Plaintiff's claims against them is at best one for negligence, *i.e.* negligent failure to provide him with the type of knee brace he felt he required.  The law is clear that negligence is not a basis for a § 1983 action.  *See Davidsen v. O'Lone,* 752 F.2d 817 (3d Cir. 1984); *Daniels v. Williams*, 474 U.S. 327 (1986).  To the extent Plaintiff is deemed as raising a  state law claim for negligence against Medical Defendants, it is barred by the Eleventh Amendment. Thus, any tort law claim Plaintiff is deemed as raising  should be dismissed.  *See also Dantzler v. Beard*, 2006 WL 3694515, * 5 ( W.D. Pa.) (no state law claims in civil rights action since no waiver of sovereign immunity for them by State).

The Court in *Kretchmar v. Beard*, 2006 WL 2038687, * 3 (E.D. Pa.), stated that the inmate's state law claims were barred by the Eleventh Amendment and dismissed them for lack of subject matter jurisdiction.  The *Kretchmar* Court also stated:

> "To the extent that Plaintiff brings this action for violations of federal law, pursuant to § 1983 and RLUIPA, his suit against Defendants for injunctive and declaratory relief is permitted by the *Young* exception to Eleventh Amendment immunity.  Plaintiff's claims for violations of state law, however, do not fall under the exception of *Young*, and cannot be brought in federal court. " *Id.*

*See also Keys v. Beard,* Civil No. 07-0337 (M.D. Pa.), Doc. 20.

In short, Plaintiff disagrees with Medical Defendants that the knee brace they provided him which was allowed by the DOC was as good as the knee brace he wanted.  Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).  "In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference." *Ascenzi v. Diaz*, 2007 WL 1031516, *(citation omitted).

Further, as Defendants point out, the undisputed evidence shows that the medical care they provided Plaintiff for his knee condition did not cause him any physical injury or exacerbate his condition.

Thus, we will recommend that the Summary Judgment Motion of Medical Defendants be granted on its merits.

**VI.  Recommendation.**

Based on the foregoing, it is recommended that Medical Defendants' Motion for Summary Judgment **(Doc. 165)** be deemed unopposed, and that the Motion be granted based on its merits. It is also recommended that Judgment be entered in favor of Medical Defendants and against Plaintiff.   Finally, it is recommended that this case be recommitted to the undersigned for consideration of the Summary Judgment Motion of remaining Defendants, namely, Corrections Defendants.

<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 13, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | CIVIL ACTION NO. **3:CV-06-1655** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, SECRETARY OF THE | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 13, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                  **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                                                  **United States Magistrate Judge**

**Dated: April 13, 2009**