# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER, | : | No. 3:06cv1655 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| KEVIN KNEAL, | : | |
| BARBARA MILEWSKI, | : | |
| SCOTT STERLING, and | : | |
| RONALD SLIVKA | : | |
|     Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court are Plaintiff Ronald Plaster's objections (Doc. 189) to the Report and Recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 183). Magistrate Judge Blewitt proposes that we grant the defendants' Motion for Summary Judgment (Doc. 165), in regard to defendants Dr. Scott Sterling, D.O. and Ronald Slivka, P.A. (hereinafter "Medical Defendants"). Having been briefed, this matter is ripe for disposition.

## **BACKGROUND**

This case arises out of the plaintiff's incarceration at the State Correctional Institution at Frackville ("SCI-Frackville"). (Amended Complaint (Doc. 112) at ¶ 3) (hereinafter "Am. Compl."). Originally, the plaintiff filed, *pro se*, a civil rights action pursuant to 42 U.S.C. § 1983 naming ten defendants,

nine of whom are employed by the Pennsylvania Department of Corrections at SCI-Frackville. (Doc. 1) (hereinafter "Compl."). The remaining defendants in this case are: Kevin Kneal, security captain at SCI-Frackville; Barbara Malewski, the correctional healthcare administrator at SCI-Frackville; Scott Sterling, the doctor at SCI-Frackville, and Ronald Slivka, a physician's assistant at SCI-Frackville. (Am. Compl. ¶¶ 4-8).

Plaintiff Plaster contends that prison guards, officials, and medical staff denied him access to a specific type of knee brace that would prevent him from suffering continued injury to his left knee. (Id. at ¶¶ 11-13). The plaintiff asserts that the prison and its medical staff demonstrated deliberate indifference to his serious medical needs, thus violating the Eighth Amendment prohibition of cruel and unusual punishment. (Id. ¶¶ 40-53).

Plaintiff Plaster first entered SCI-Frackville in 2005 with a history of chronic dislocating left knee and loose knee syndrome. (Compl. at ¶ 13). A knee stabilizer brace with a metal or plastic hinge was ordered in August 2005 by a member of the prison medical staff to treat his condition; however, according to the plaintiff, this brace was not the proper brace for his medical needs. (Compl. at ¶ 14-15). The Plaintiff admitted that he was offered another type of knee brace, but claimed that he would not sign a waiver for it

2

since it was not the proper, hinged knee stabilizer brace that prison medical staff had ordered. (Id.)

Plaintiff Plaster avers that he was given the wrong knee brace due to security concerns. (Id. at ¶ 16). According to the plaintiff, his knee dislocated eleven times in one year and that this happened because he was issued the improper brace and was given substandard medical treatment. (Id. at ¶ 17). These actions, as the plaintiff alleges, amounted to deliberate indifference to his serious medical needs. Moreover, the plaintiff maintains that the deliberate indifference to his dislocating knee caused him severe pain and suffering and lasting damage. (Id. at ¶ 20).

On December 27, 2006, this court entered a memorandum and order adopting previous recommendations of Magistrate Judge Blewitt and dismissed all claims against the moving defendants except Plainitff Plaster's Eighth Amendment claims. (Doc. 23). The Magistrate Judge granted Plaintiff Plaster's motion to file an amended complaint against the Medical Defendants and Lora Ellsworth, P.A. on October 18, 2007. Medical Defendants and Ellsworth subsequently filed a motion to dismiss the plaintiff's amended complaint. (Doc. 120, 121). Magistrate Judge Blewitt issued a report and recommendation on the motion to dismiss on April 29, 2008. (Doc.

139). On August 29, 2008, this court entered a memorandum and order adopting in part Magistrate Judge Blewitt's recommendations. We granted the motion to dismiss Defendant Ellsworth only and remanded the case to Magistrate Judge Blewitt for further proceedings. (Doc. 151). The remaining Medical Defendants subsequently filed a motion for summary judgment on December 18, 2008. (Doc. 165).

A brief in opposition was due by February 9, 2009, in accordance with the Magistrate Judge's Order. (Doc. 171). Plaintiff Plaster did not respond by that date. Magistrate Judge Blewitt subsequently filed a Report and Recommendation on the Motion for Summary Judgment on April 13, 2009. The Magistrate Judge recommended that the Motion for Summary Judgment be deemed unopposed and that the motion be granted on the merits. That same day, however, Plaintiff Plaster's brief in opposition was filed. The plaintiff also later filed objections to the report and recommendation on June 3, 2009. Although untimely, we accept both filings and render a decision based on the merits.

**JURISDICTION**

Because this case is brought pursuant to 42 U.S.C. § 1983 and alleges violations of the plaintiff's Eighth Amendment rights, the court has jurisdiction

4

pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**STANDARD OF REVIEW**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The district court judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id.

Before the court is Magistrate Judge Blewitt's recommendation that we grant the defendants' motion for summary judgment. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Knabe v. Boury, 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting Fed. R. Civ. P. 56(c)). "[T]his standard provides that the

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. Id. at 257. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas Co.,364 F.3d 135, 140 (3d Cir. 2004) (citation omitted). Moreover, a fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. Anderson 477 U.S. at 248; Levendos v. Stern Entertainment Inc., 860 F.2d 1227, 1233 (3d Cir.1988).

The moving party maintains the burden to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the

non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

The plaintiff makes three objections, two of which concern the timeliness of his opposition brief. In his report and recommendation, Magistrate Judge Blewitt recommended that summary judgment in favor of the Medical Defendants be granted due to the plaintiff's failure to prosecute under Federal Rule of Civil Procedure 41(b). (Report and Recommendation at 11). The Magistrate Judge, however, did not rest his decision soley on a failure to prosecute. He also addressed the merits of plaintiff's claims. He concluded based upon a review of the merits that plaintiff's Eighth Amendment claim should be dismissed. (Id. at 15). Because we are primarily concerned with the plaintiff's Section 1983/Eighth Amendment claims, we will discuss the merits of those claims below, reaching a decision in accord with Magistrate Judge Blewitt's recommendation. As such, we directly address the plaintiff's third objection regarding whether there are genuine issues of

material fact with regard to the Medical Defendants. Thus, we need not discuss the objections relating to the timeliness of plaintiff's brief as those objections are moot.

The Magistrate Judge found no deliberate indifference on the part of the Medical Defendants. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment," and states a cause of action under 42 U.S.C. § 1983, regardless of how evidenced. Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) (internal quotations omitted); see West v. Keve, 571 F.2d 158 (3d Cir. 1978).

A claim alleging an Eighth Amendment violation has objective and subjective components. First, "the deprivation alleged must be, objectively, 'sufficiently serious'." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991). A medical need is serious if, for example, "it is one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir.1987) (internal quotations and citations omitted) ("Lanzaro"). Second, the prison official must

subjectively know of and disregard "an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837-38.

"To establish a constitutional violation, the indifference must be deliberate and the actions intentional." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). An inmate can show deliberate indifference where, for example, "prison authorities deny reasonable requests for medical treatment. . . and such denial exposes the inmate to undue suffering." Lanzaro, 834 F.2d at 346. "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 346-47 (quoting Todaro v. Ward, 565 F.2d 48, 53 (2d Cir. 1977). "Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." Id. (quoting West, 571 F.2d at 162) (further citations omitted).

However, allegations of negligence do not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. A mere difference of opinion

9

between the prison's medical staff and the inmate with regard to the diagnosis or treatment that the inmate receives, does not support an Eighth Amendment claim.  See Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (noting that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment.").  The chief question is whether the plaintiff prisoner has been provided with some type of treatment by the defendants, regardless of whether it is what the plaintiff desired.  Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D.Pa. 1988).  The Third Circuit has also noted that "whether or not a defendant's conduct amounts to deliberate indifference has been described as a 'classic issue for the fact finder.'"  A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 588 (3d Cir. 2004) (quoting Nicini v. Morra, 212 F. 3d 798, 816 (3d Cir. 2000) (footnote omitted) (Rendell, J., dissenting)).

Because Plaintiff Plaster does not elaborate on his objection that there was indeed deliberate indifference, we look to other filings in order to understand the full picture in a light most favorable to the plaintiff.  The plaintiff offers no protest to the Defendant's Statement of Uncontested Facts (Doc. 167) either separately, in his brief in opposition to summary judgment,

or in his objections to the report on the instant motion.  In his brief in opposition, the plaintiff states that "Ronald Slivka has never ordered a knee brace and or Doctor Scott Sterling...Mr. Sterling alleges he ordered a knee brace for the plaintiff however in medical records Mr. Sterling gives not any medical orders [sic]." (Plaintiff's Brief in Opposition at 5).  Later in his argument, the plaintiff reiterates, "[t]he knee stabilizer was never ordered. " Nothing else appears disputed.

Magistrate Judge Blewitt, having reviewed the defendant's statement of facts, the plaintiff's medical records, and his deposition transcript, found that the plaintiff advanced no evidence that indicated deliberate indifference on the part of the Medical Defendants.  We agree.  Although plaintiff's medical records indicate that the Medical Defendants did not personally order a specific type of knee brace for the plaintiff, the records also indicate that the plaintiff refused to use other knee braces that were ordered by members of the prison medical staff.  Moreover, the records show that the medical staff, including the named defendants, provided him with  two knee braces, medication, and treatment to alleviate his left knee pain, along with knee sleeves, wrap bandages, crutches, canes, wheelchairs, and even

11

strengthening exercises to address his condition. (See Doc. 166, Ex. L, "Medical Records of Ronald Plaster").

Plaintiff Plaster also fails to elaborate on why he refused the prescribed treatment as noted in his records. After aggravating the condition in his left knee at SCI-Frackville, a knee stabilizer was ordered on August 5, 2005. (Id. at 66). On August 10, 2005, a nursing note indicates that the plaintiff was given a knee stabilizer but he refused it. It was then explained to the plaintiff that security would not approve the knee stabilizer with hinges that he desired. (Id. at 4). On August 10, 2005, the knee stabilizer was discontinued because the plaintiff apparently refused to receive it. (Id. at 69).

After another injury occurred on December 6, 2005, a second knee brace was ordered and the plaintiff accepted it. (Id. at 8, 73). The Medical Defendants administered follow-up care, noting that plaintiff was often not wearing the knee brace because, as he complained, it was the wrong one or not the one he wanted. (Id. at 17-22). At this time, Defendant Slivka appeared aware of Plaintiff Plaster's request for a hinged metal knee brace, but informed the plaintiff that a metal brace would not be permitted by security. (Id. at 19-22). The plaintiff requested in March 2006 to be seen by

an outside orthopedist. This third-party doctor also recommended that the plaintiff continue using the brace that was supplied. (Id. at 57-59).

Defendant Slivka made several notes in the plaintiff's medical record throughout 2006 indicating that the plaintiff was not wearing the knee brace as recommended. (Id. at 35, 42). On February 27, 2007, Plaintiff Plaster, again requested a change in his knee brace, and was given a catalog on knee braces. (Id. at 48). Defendant Slivka later informed the plaintiff that only braces with non-metal hinges could be ordered. (Id. at 50).

The plaintiff does not dispute his medical records in his brief or objection. Moreover, Plaintiff Plaster appears to admit in his deposition that the Medical Defendants were not deliberately indifferent with regard to their treatment of his knee condition. "Dr. Scott Sterling and Ron Slivka...tried their best to get me my hinge stabilizer but the Department of Corrections threw everything in the book at them...I'm not actually here to find [the] defendants guilty on that area." (Doc. 166, Ex. C., "Plaster Dep." 45-46).

 As the Magistrate Judge found, the undisputed evidence shows that the Medical Defendants provided the plaintiff with full medical treatment for his knee condition, short of the hinged knee brace that the plaintiff preferred and requested. There is no evidence that the conduct of prison officials amounted

to sufficiently serious medical deprivation or knowing indifference to the plaintiff's medical needs. The Medical Defendants provided the plaintiff with another brace, which they believed in their professional opinion would provide treatment that was appropriate and medically necessary.  Moreover, the effectiveness of the brace provided by the prison medical staff was verified by an examination of the plaintiff by an outside orthopedic specialist, which the plaintiff requested and received.  A mere disagreement as to the proper medical treatment between an inmate and prison medical staff does not support a claim of deliberate indifference or evince an Eighth Amendment violation, especially in light of the comprehensive treatment provided and the plaintiff's lack of compliance to ordered therapy.  See Pierce, 612 F.2d at 762. Even if the treatment offered by prison medical staff and the outside specialist amounted to negligence, the actions or inactions here would not rise to the level of a constitutional violation, under Estelle and its progeny.  Accordingly, we accept Magistrate Judge Blewitt's report and recommendation for summary judgment on the merits.

**CONCLUSION**

For the reasons stated above, the court will overrule the plaintiff's objections and adopt the report and recommendation. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD PLASTER,<br>　　　Plaintiff | : | No. 3:06cv1655 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| KEVIN KNEAL,<br>BARBARA MILEWSKI,<br>SCOTT STERLING, and<br>RONALD SLIVKA<br>　　　Defendants | :<br>:<br>:<br>:<br>: | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 11th day of August 2009:

1. The plaintiff's objections to the report and recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 189) are hereby **OVERRULED**;

2. The report and recommendation (Doc. 183) is hereby **ADOPTED**;

3. The motion of Defendants Dr. Scott Sterling, D.O. and Ronald Slivka, P.A. for summary judgment (Doc. 165) is hereby **GRANTED**; and they are dismissed from this action.

**BY THE COURT:**

s/ James M. Munley
**JUDGE JAMES M. MUNLEY
United States District Court**

16